# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

THE PEOPLE *ex rel.* Charles L. Breckon

*v.*

BOARD OF ELECTION COMMISSIONERS OF CITY OF CHICAGO.

*Opinion filed April 5, 1906.*

1. ELECTIONS—*primary elections are within contemplation of section 18 of the Bill of Rights.* The elections protected by section 18 of the Bill of Rights, (Const. 1870, art. 2,) providing that "all elections shall be free and equal," are all such elections as are held under authority of law at which qualified electors may vote, and hence a primary election law which regulates the form of the ballot, what shall appear thereon and how the candidates shall be chosen must not violate said section.

2. SAME—*legislature may prescribe reasonable requirements for official ballot.* The legislature may prescribe reasonable requirements concerning the official ballot which will not subvert or injuriously restrict the right of suffrage nor conflict with the provisions of the constitution.

3. SAME—*right to choose candidates is as sacred as the right to vote for them after they are chosen.* The right to choose candidates for public offices whose names shall appear upon the official ballot is as valuable a right, and is of precisely the same nature, as the right to vote for them after they are chosen, and hence any law

regulating primary elections must sustain and enforce the provisions of the constitution and the rights of the voters, and not curtail, subvert or injuriously restrict them.

4. CONSTITUTIONAL LAW—*a law must be complete when it leaves the legislature.* A law must be complete in all its terms and conditions when it leaves the legislature, so that every one may know, by reading the law, what his rights are and how it will operate when put into execution.

5. SAME—*section 6 of Primary Election law of 1905 is void for delegating legislative power.* Section 6 of the Primary Election act of 1905, (Laws of 1905, p. 213,) authorizing the several county central committees to determine whether candidates shall be nominated by the voters or by delegates, and whether by a majority or plurality vote, is void as a delegation of legislative power, since that question is purely a legislative one where the constitutional provision that a plurality shall elect does not apply.

6. SAME—*section 2 of Primary law of 1905 is void.* Section 2 of the Primary Election law of 1905 is void as an attempted amendment of certain provisions of the Ballot law of 1891 by reference to its title, only.

7. SAME—*section 58 of Primary law of 1905 is void.* Section 58 of the Primary Election law of 1905, limiting the number of candidates for senator and representative who shall come from any particular county of the senatorial district, adds a new qualification for candidates and imposes a new restriction upon voters not contained in section 3 of article 4 of the constitution, fixing the eligibility for those offices, and is void.

8. SAME—*provisions requiring payment of fees for becoming candidates are void.* The provisions of the Primary Election law of 1905 requiring persons desiring to become candidates for certain public offices to pay an arbitrary fee, bearing no relation to the services for filing the petition nor to the expenses of the election, are void, as an unwarranted restriction upon the right of any eligible person to become a candidate for office and upon the right of voters to choose any eligible person for their candidate.

9. SAME—*an act which can apply to but one county means that county.* A statute which by its general terms can apply to but one county in the State must be held as having been meant to apply to that county only, notwithstanding the statute uses general terms and does not designate the particular county by name.

10. SAME—*the law regulating county affairs means one which affects the people of the county.* A law regulating county affairs, as that term is used in section 22 of article 4 of the constitution, prohibiting the passage of special or local laws upon that subject,

means a law which regulates affairs which affect the people of the county.

11. SAME—*diversity of rights between legal voters cannot rest on basis of population.* Diversity of rights between legal voters can not arise out of nor rest upon the number of people residing in the county where a voter happens to reside, and hence an election law creating different rights for voters in different counties, based upon a classification of the counties by population, is unconstitutional.

12. SAME—*Primary Election law of 1905 is void as a special law regulating county affairs.* The Primary Election law of 1905, which, by section 65 of the act, provides one law for counties having a population of 125,000 or more and a different law for other counties of the State, is void as a special law regulating county affairs, and, in consequence of its discriminations between such counties, violates the constitutional provision that all elections shall be free and equal, and is, as a whole, unconstitutional and void.

ORIGINAL petition for *mandamus.*

CARL STROVER, for relator:

Section 2 of the Primary Election act of 1905 violates the constitutional rule that no law shall be amended by reference to its title only, but the section amended shall be inserted at length in the new act. *People* v. *Loeffler,* 175 Ill. 585.

By section 58 of the act it is attempted to limit the number of candidates for the State legislature which can be nominated from any one county. Such a provision is plainly outside of the province of an act to provide for the "holding and regulation of primary elections." Besides, it constitutes an additional qualification to the conditions fixed by the constitution for eligibility to the General Assembly.

An act can only be sustained as to the subject expressed in its title, and all other subjects are to be rejected. *Hogan* v. *Akin,* 181 Ill. 448.

Section 6 of the act attempts to vest the county central committees of the parties entitled to hold primaries under the act with discretionary powers to determine whether the several county officers shall be nominated at the primary election or by the delegates chosen at such primary to the

county convention; also with arbitrary power to determine whether such officers shall be nominated by a majority or plurality vote at the primaries. Legislative power cannot be delegated. 6 Am. & Eng. Ency. of Law, 1021, and cases cited; Cooley's Const. Lim. (7th ed.) 163, and cases cited; *Field* v. *Clark*, 143 U. S. 649; *Arms* v. *Ayer*, 192 Ill. 601.

Primary election laws are included within the prohibition of paragraph 18 of article 2 of the constitution. *Britton* v. *Commissioners*, 129 Cal. 337; *Spier* v. *Baker*, 120 id. 370.

All elections regulated by public law are required to be free and equal in every respect, except in so far as restrictions of such freedom and equality are imposed by the constitution or are essential to the public welfare. *People* v. *Hoffman*, 116 Ill. 587; *Morrison* v. *Bachert*, 112 Pa. St. 322; *Pettibone* v. *Park Comrs.* 215 Ill. 304.

A statute cannot evade the purpose of the constitution while keeping within the letter of its terms. *People* v. *Albertson*, 55 N. Y. 50; 8 Cyc. 804.

The Primary Election act of 1905 constitutes a regulation of county and township affairs, within the meaning of the constitution. County affairs are those relating to the county in its organic and corporate capacity and included within its governmental or corporate powers. *Hawkins* v. *Mayor*, 64 N. Y. 22; *Pettibone* v. *Park Comrs.* 215 Ill. 304.

It is not the mere form that decides whether a law is general or special, but the result attained. *People* v. *Cooper*, 83 Ill. 585.

An act which applies to Cook county alone (except where authorized by the constitution) is a special and local law, within the prohibition of the constitution. *People* v. *Meech*, 101 Ill. 200; *Devine* v. *Cook County*, 84 id. 590.

A so-called classification cannot be made the means of evading the constitutional provision, and if the attempted classification has no foundation in actual difference in situation or circumstances, and there is no reasonable relation between the classification and the purposes to be attained,

the law will be held void. *Dupee* v. *Swigert*, 127 Ill. 494; *People* v. *Martin*, 178 id. 611; *People* v. *Knopf*, 183 id. 410.

All regulations of the elective franchise must be reasonable, uniform and impartial, and must not directly or indirectly deny or abridge the right to vote or impede its exercise. If they do, they are void. Cooley's Const. Lim. 7, 908; *Attorney General* v. *Detroit*, 78 Mich. 545; *Brewer* v. *McCleland*, 144 Ind. 423; *Morris* v. *Powell*, 125 id. 281.

W. W. WHEELOCK, and J. H. BATTEN, for respondents:

The Primary Election act of 1905 does not violate section 13 of article 4 of the constitution by embracing more than the one subject expressed in its title. *Morrison* v. *People*, 196 Ill. 454; *Manchester* v. *People*, 178 id. 287; *Johnson* v. *People*, 83 id. 431; *Blake* v. *People*, 109 id. 504; *Mix* v. *Railroad Co.* 116 id. 502; *People* v. *Hazelwood*, 116 id. 319; *Town of Abington* v. *Cabeen*, 106 id. 200; *People* v. *Blue Mountain Joe*, 129 id. 370.

The act of 1905 does not violate section 1 of article 4 of said constitution by attempting to lodge legislative power elsewhere than in the General Assembly. *People* v. *Kipley*, 171 Ill. 65; *People* v. *Loeffler*, 175 id. 585; *Kipley* v. *Luthardt*, 178 id. 525; *Traction Co.* v. *Chicago*, 199 id. 523; *Goddard* v. *Railway Co.* 202 id. 368; *People* v. *Voorhis*, 91 N. Y. Sup. 595.

The act of 1905 does not violate section 3 of article 4 of the constitution by attempting to indirectly require qualifications for eligibility to the General Assembly not required by said constitution. Said section requires qualifications of age, citizenship of the United States, "five years a resident of this State, and for two years next preceding his election a resident within the territory forming the district from which he is elected." *State* v. *Johnson*, 91 N. W. Rep. 604; *State* v. *Moore*, 87 Minn. 308.

The act of 1905 does not violate section 18 of article 2 of the constitution by attempting to impair the freedom and

equality of elections. *People* v. *Hoffman,* 116 Ill. 587; *Byler* v. *Asher,* 47 id. 101; *Todd* v. *Election Comrs.* 104 Mich. 474; *Detroit* v. *Rush,* 82 id. 532; *Capon* v. *Foster,* 12 Pick. 485; *Minor* v. *Olin,* 159 Mass. 487; *Ransom* v. *Black,* 54 N. J. L. 446; *Peterson* v. *Barlow,* 60 Pa. St. 54; *Cusick's Election,* 136 id. 459; *Walt* v. *Bartley,* 146 id. 529; *State* v. *Lean,* 9 Wis. 279; *Montgomery* v. *Chelf,* 26 Ky. L. 638; *Ladd* v. *Holmes,* 66 Pac. Rep. 714.

The act of 1905 does not violate section 22 of article 4 of the constitution as being local and special legislation. *People* v. *Hoffman,* 116 Ill. 587; *State* v. *Elliott,* 158 Ind. 168; *Morrison* v. *People,* 196 Ill. 463; *People* v. *Onahan,* 170 id. 453; *Railroad Co.* v. *Randle,* 183 id. 370; *People* v. *Cook County,* 176 id. 588; *Stock Car Co.* v. *Traeger,* 187 id. 9.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The relator, a citizen of the United States and of the State of Illinois, a legal resident and voter of the city of Chicago and a member of the socialist party of said city, filed in this court, in pursuance of leave granted for that purpose, his petition for a writ of *mandamus* directed to the defendants, the board of election commissioners of the city of Chicago, commanding them to allow the said party to hold a primary election under the act of May 11, 1901. (Laws of 1901, p. 172.) The petition alleges that the socialist party of Cook county is, and for five years last past has been, a political party within said city and the county of Cook; that in 1885 said city adopted the act of that year regulating the holding of elections in cities, villages and incorporated towns, and said act, with its amendments, is in full force in said city; that defendants constitute the board of election commissioners under the provisions of said act; that at the last preceding general election for Governor the socialist party

polled over ten per cent of the entire votes cast in said city; that the central committee of said party, at a regular meeting held December 10, 1905, determined to hold a primary election in said city in 1906, and afterwards filed with the defendants a call or application therefor in accordance with said act of 1901; that defendants denied said application, and adopted a resolution, which was spread upon the records of the proceedings of said board, reciting that the application was in all respects in conformity with the provisions of said act, but declining to issue the call on the ground that said act was repealed by an act entitled "An act to provide for the holding and regulation of primary elections," approved May 18, 1905, in force July 1, 1905, and that the defendants for that reason, and no other, have persisted, and still persist, in refusing to allow said party to hold a primary election in pursuance of said application. The relator by his petition contends that the act of 1905, mentioned in the resolution of the board, is in contravention of various provisions of the constitution of this State and of the constitution of the United States set forth in said petition, and for that reason is null and void; that the act of 1901 is still in full force and effect, and that it is the duty of the defendants to allow the socialist party to hold primary elections under said act of 1901 and to take the necessary steps for that purpose. The defendants have demurred to the petition and the relator has joined in the demurrer. The cause has been argued orally and by printed briefs and arguments and has been submitted for final decision on the demurrer.

The purpose of this proceeding is to test the validity of the act entitled "An act to provide for the holding and regulation of primary elections," approved May 18, 1905. The subject matter of the act is of a legislative nature and under legislative control, subject only to the limitations and prohibitions of the constitution. Under our political system the sovereignty is and remains in the people, and by the constitution which they have adopted the powers of government are

divided into three distinct and separate departments,—the legislative, executive and judicial,—to be exercised by each department in the manner and under the limitations prescribed by the constitution. The people, however, reserved to themselves the ultimate sovereignty, to be exercised by means of the ballot at elections held for the purpose of choosing the persons who shall fill the several departments, or to decide any question that may properly be submitted to them, or even to modify or change the fundamental law. To protect and preserve that sovereignty the people registered their will that its exercise shall be absolutely free, and that the vote of every qualified elector shall be equal in its influence with that of every other one, by section 18 of the Bill of Rights, providing that all elections shall be free and equal. The legislature may and ought to provide all such reasonable regulations as will make the provision of the constitution effectual, and guard against fraud, undue influence or oppression, and preserve the equal rights of all from interference or encroachment. In *Sherman* v. *People*, 210 Ill. 552, the court gave expression to the law on that subject as follows: "The proper and honest conduct of elections is one of the most important functions of government, and the legislature certainly is charged with the duty of enacting such laws as will accomplish this end."

It is undoubtedly true that at the time the constitution was adopted, primary elections, as such, were not within the contemplation of the convention or the people, for the reason that up to that time they had not been made part of the election system or subject to regulation by law. At that time candidates for office were nominated by means of the caucus and convention of delegates, and such nominations were purely private affairs of the political organizations. Since that time there has been a considerable extension of the election system. The election laws had already been extended by providing for registration in advance of the election, so that all electors might know beforehand who claimed the right to vote and to make necessary investigations to deter-

mine whether the right existed, but the voter was allowed to deposit his ballot on certain conditions even if he had not been registered. After the adoption of the constitution the act of 1885, before mentioned, was passed, regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns which might adopt the act. That act creates a board of election commissioners, provides for the registration of voters in advance of the election, and prohibits an elector from voting, although otherwise qualified, if his name does not appear upon the register. While that act regulates the manner of holding elections, the provisions for registration before the election are a regulation of the election to the same extent as the provisions for depositing the ballot in the box. Other new and previously unknown provisions were contained in the act of 1891, providing for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections and to enforce the secrecy of the ballot, (Laws of 1891, p. 108,) and commonly known as the Australian Ballot law. That act provides for an official ballot, and in connection with it regulates the nomination of candidates whose names shall be placed on the ballot, the filing of nomination papers and certificates of nomination, and for the printing and distribution of ballots at public expense. No other ballot can be used, and the provisions and restrictions of the act as to what parties and names and other matters shall appear upon it are regulations of elections equally with those provisions which relate to the actual conduct of the election on election day. It is manifest that if an official ballot must be used, nominations of candidates whose names shall appear upon the ballot must be regulated in some way, otherwise the whole scheme would become incapable of execution. The right of the legislature to provide for an official ballot is not questioned, and it follows that the legislature may prescribe reasonable requirements concerning it which will not subvert or injuriously restrict

221—2

the right of suffrage or conflict with the provisions of the constitution. The act of 1905, which is now under consideration, makes further extensions and regulations for choosing candidates whose names shall be printed on the official ballot, and the legislation is of the same character as the Ballot law. All these acts relate to the same subject, and in combination are designed to constitute a single and harmonious system under which the people may exercise the elective franchise and make their choice between the candidates for public offices. They all relate to elections, and are within the meaning of that word as used in the constitution.

It seems clear that the elections protected by the constitution are all such elections as are held under authority of law, at which qualified electors may vote; and when statutes are enacted which regulate the form of the ballot to be used, what shall appear upon the ballot, and how the candidates whose names shall so appear shall be chosen, the provision of the Bill of Rights applies to the new condition. The right to choose candidates for public offices whose names will be placed on the official ballot is as valuable as the right to vote for them after they are chosen, and is of precisely the same nature. There is scarcely a possibility that any person will or can be elected to office under this system unless he shall be chosen at a primary election, and this statute, which provides the methods by which that shall be done and prescribes and limits the rights of voters and of parties, must be regarded as an integral part of the process of choosing public officers, and as an election law. It is undoubtedly true, as urged by counsel for defendants, that it has become not only proper, but necessary, to provide additional safeguards and protection to the voters at primary elections, to the end that their will may be fully expressed and faithfully and honestly carried out, and any law having that object in view would naturally commend itself to the law-making power. The legitimate purpose of such a law, however, must be to sustain and enforce the provisions of the constitution and the rights

of voters, and not to curtail or subvert them or injuriously restrict such rights.

It is contended by counsel for relator that the act in question violates the provision of the Bill of Rights guaranteeing the freedom and equality of elections, and also various other provisions of the constitution with reference to the amendment of existing laws and to local and special legislation. Some of these objections relate only to particular sections of the act, while others affect it as a whole. One objection of the first class relates to section 6 of the act, and is founded on the fundamental maxim of constitutional law that the legislature cannot delegate legislative powers. The legislature must decide what the law shall be, and the power delegated to that department by the constitution cannot be again delegated to any other body or authority. (Cooley's Const. Lim.—7th ed.—163; *Arms* v. *Ayer,* 192 Ill. 601; 6 Am. & Eng. Ency. of Law,—2d ed.—1021.) A law must be complete in all its terms and conditions when it leaves the legislature, so that every one may know, by reading the law, what his rights are and how it will operate when put into execution. It is manifest that if there is anything in this law which is legislative in its nature and a proper subject for the exercise of the legislative power, it is the question whether a majority or plurality shall be necessary to an election. A law which would provide for an election to public office and make no provision in that respect, except where the constitution has already made the provision, would be incomplete as a law. The constitution provides for the election of various officers and that a plurality shall elect, but where the constitution does not apply it is a legislative question, and it would be a delegation of legislative power to provide that any other authority should decide that question. This act provides that the county central committee of each political party shall determine whether the county officers shall be nominated at the primary election by the voters or by delegates chosen at such election, and also whether the candidates shall

be nominated by a majority or plurality vote. If a committee decides that a majority shall be necessary, that is to be the law; but if they decide that a plurality shall elect, the candidate is to be chosen by a plurality vote. The provision amounts to a delegation of legislative authority to county central committees to determine what the substantial features of the law shall be, and it is therefore void.

Section 13 of article 4 of the constitution provides that no law shall be amended by reference to its title only, but the section amended shall be inserted at length in the new act. Section 2 of this act provides that nothing contained in it shall be construed to prevent nomination of candidates by petition by any party as defined in the act, pursuant to the provisions of sections 4, 5 and 6 of an act entitled "An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public office, to regulate the manner of holding elections and to enforce the secrecy of the ballot," provided the petition shall be filed on or before noon of the day previous to the day of the primary election. A subsequent act may have the practical effect of amending a prior one, or it may be substituted for it without violating the constitution, but this act is a direct violation of it. The Ballot law provides for nomination by petition signed by a certain number of qualified voters or certain percentages of such voters, and the petition is to be filed a certain period of time before the election to office. This act changes the time for filing the petition and confines the right to certain political parties and attempts to amend the act by reference to its title only. Section 2 is void for that reason.

Section 58 of the act provides that "in senatorial districts consisting of two counties no more than two persons of the same political party, that is, one candidate for senator and one for representative, or two candidates for representative, shall be nominated from any one county; and that in senatorial districts consisting of three counties or more, only one person of the same political party, that is, either one candi-

date for senator or one candidate for representative, shall be nominated from any county." Section 3 of article 4 of the constitution fixes the eligibility for office of a senator or representative, and the only requirement as to residence is that he shall have resided for two years next preceding his election within the senatorial district. The act adds a new qualification and imposes a new restriction upon the candidates and the voters, by requiring that the candidates shall come from particular counties of the district. It is not within the power of the legislature to add to the qualifications fixed by the constitution or to impose the additional restrictions, and that provision of the act must be considered void.

Other provisions of the act require a cash payment from persons desiring to become candidates for certain offices. It is provided that any one desiring to become a candidate for Governor or United States Senator shall pay, on filing a petition of legal voters, a filing fee of $100. Each congressional candidate must make a payment of $100, each candidate for senator $50, each candidate for member of the House of Representatives $25, and in Cook county a candidate for mayor must pay $75 and a candidate for alderman $25. These payments bear no relation to the services rendered in filing the papers or the expenses of the election. They are purely arbitrary exactions of money, to be paid into the public treasuries as a monetary consideration for being permitted to be a candidate. The payments are not intended as compensation for services rendered in filing the papers, but the provisions make the ability and inclination of a person to pay money a test of his qualification and of the right of the voters to choose him for public office. Every eligible person has a right to be a candidate for a public office without being subject to arbitrary or unreasonable burdens. The voters have a right to choose any eligible person, and he owes a duty to the public to qualify and serve. (*People* v. *Williams*, 145 Ill. 573.) Reasonable regulations, such as a petition from a proper percentage of voters which would show that

they want the privilege of voting for a person, or other reasonable conditions or restrictions, may be imposed. If there were no such conditions the ballot might be so large as to be impracticable, but there can be no discrimination between candidates based upon the ground that one has money to pay for the privilege of being a candidate and chooses to pay, and another has not the means or is unwilling to buy the privilege. The only reply of counsel for defendants on this subject is, that a candidate can be nominated without having his name printed on the ballot; that he may have his name written in and a square placed in front of it and a cross put in the square, and if he secures enough votes in that way he will be the nominee of the party. That argument does not call for much attention. It is a foregone conclusion that the candidate will be chosen from those whose names are on the primary ballot, and it is no answer to the argument against an illegal and arbitrary discrimination in favor of one who is able and willing to make a cash contribution and against one who is unable or unwilling to do so, to say that the voters may write the name of a candidate on the ticket and make a square in front of it and put a cross in the square. The Supreme Court of the State of Nebraska, having under consideration a similar provision which was held to be illegal and void, said: "To say that the voters are free to exercise the elective franchise at a general election for nominees in the choice of which unwarranted restrictions and hindrances were interposed would be a hollow mockery." (*State* v. *Drexel*, 105 N. W. Rep. 174.) But this act makes no provision for blank spaces and squares for the insertion of names of candidates who have not paid their money. It does provide that all the general election laws of this State shall be in full force and effect where the same are not in conflict with the act. If that provision could be said to authorize the writing in of names on the primary ballot because provision is made in the Ballot law for doing so, it would be only by indirection; and it cannot have that effect for the reason that

the provision of the Ballot law is in conflict with this act. It is the plain intention of the legislature, apparent on the face of the act, that no one shall be voted for at the primary election except those who have contributed the cash to the public treasury. The provisions by which the candidates are required to buy their way to office are an unwarranted hindrance and impediment to the rights of the candidates and voters alike, and are illegal and void.

There are other provisions in addition to section 18 of the Bill of Rights, which guarantees that all elections shall be free and equal, which are of importance in considering the act as a whole. In view of the well known evils of local and special legislation, the people provided, in section 22 of article 4 of the constitution, that the legislature should not pass local or special laws in any of a considerable number of enumerated cases, among which were laws regulating county and township affairs. The section contains a general prohibition against a special law in any case where a general law can be made applicable, but the general provision is addressed to the judgment and discretion of the legislature. In the enumerated cases the people saw fit to make a rule which could not be disregarded or evaded under any pretext. (*Knopf* v. *People*, 185 Ill. 20.) If this law is a local or special law and has the effect of regulating county or township affairs it is prohibited by the constitution, and is therefore null and void. The act is divided into two broad divisions, one of which is to be in force only in Cook county and the other applies only to the rest of the State outside of Cook county. In effect there are two acts. The first sixty-four sections seem to apply, in general terms, to the State at large, but section 65 provides that in all counties having a population of 125,000 or more the subsequent sections only shall apply, except as thereinafter provided. Cook county is the only county in the State having a population of 125,000 or more, and there is no other county that could have been expected by the legislature to reach that population at any time

in the near future. It would make no difference, however, if other counties besides Cook were included with it in the classification provided for by the act. Diversity of rights between legal voters cannot arise out of or rest upon the number of people in the county where a voter happens to reside. The fact that there are many other people in the same political situation has no relation whatever to political rights. The sections of the act numbered 65 to 119 inclusive apply only to Cook county, and it was not in the contemplation of the legislature that they could apply to any other. There is, perhaps, no local or special object of legislation which may not be covered by general language, but if the language used can only be applied to one county it means that county. The substance and effect of an act determine its character and not merely the form of language employed, and this act constitutes one law for Cook county and another for the State at large outside of that county. That the act is one regulating county affairs is beyond dispute. County affairs are those relating to the county in its organic and corporate capacity and included within its governmental or corporate powers. When the constitution speaks of the affairs of a county it refers to the affairs which affect the people of that county. (*Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304; *Morrison* v. *Bachert,* 112 Pa. St. 322.) The election of county officers is a county affair and the act regulates such elections. Section 16 of the act provides that section 21 of the Ballot law shall be applicable to primary elections, and said section 21 provides for furnishing booths, guard-rails and other conveniences and supplies for an election, and that the same shall be paid for as other election expenses. The act requires the county clerks outside of Cook county to furnish the primary election judges with the necessary supplies, including registry poll-books and tally-sheets. In Cook county the expenses of conducting the primary elections are to be paid by the county, or the city, village or incorporated town. At all general county and State primary elections the judges and clerks

are to be paid by the county, and there are various provisions which fix the character of the act as one regulating county and township affairs.

The questions affecting the whole act are whether it is a local and special law on account of the different provisions for Cook county and for the rest of the State, and whether its provisions interfere with the freedom and equality of elections. Taking up those questions, we find at the outset different provisions of the law which lead to somewhat remarkable results. In the first section it is provided that the act shall not apply to the nomination of candidates for judges of the Supreme and circuit courts, or to county commissioners in counties not under township organization. By section 65 that provision and all others in the first sixty-four sections are excluded from Cook county, and the subsequent provisions are made applicable in that county. Section 66 requires that the primary elections for delegates to a convention for the nomination of candidates for all public offices in the State, or any part thereof, and for the Congress of the United States, whose names are to be printed on the official ballot, shall be held under this act. Cook county and four other counties constitute a district for the election of a judge of this court, and the act provides that in Cook county there shall be primary elections for the selection of candidates and in the other counties there shall be none. How the law can be made effectual in such a case does not appear. The act is to be the law for part of the district and not the law for another part of the same district.

Other provisions are, that in Cook county no party shall hold a primary unless such party polled twenty per cent of the vote in the particular county, city, village or incorporated town or district for which the primary is to be held, at the last election for president. Outside of that county a political party which cast ten per cent of the total vote of the State at the last preceding presidential election may hold primaries under the act. It necessarily follows from this discrimina-

tion that a party which has cast but a trifle less than twenty per cent of the total vote in Cook county cannot hold a primary, but the vote is to be counted to make up the requisite ten per cent of the vote of the State, to enable the same party to hold primaries outside of that county. On the other hand, if the vote of a party in the whole State should largely exceed twenty per cent of the total vote, the same party could not hold a primary in Cook county if the vote in that county, or in the city, village, incorporated town or district therein for which the application is made, should be less than twenty per cent. Such a provision is not only local and special, but interferes with equality of rights and freedom of voters in the different counties.

The different provisions of the act as applicable to Cook county and the rest of the State are quite numerous, and among them are the following: In Cook county the act applies to all cities, villages or incorporated towns without exception, and in other counties the act does not apply to cities, villages or incorporated towns having a population less than one thousand, as determined by the last preceding Federal census. In Cook county the primaries are held by each party separately in special primary districts and under special primary judges, while in other counties they are to be held by all parties together in the regular precincts and under the supervision of regular election judges. In Cook county a voter is disqualified if he has voted at a primary election of another party within two years, while in other counties he is only required to state his party affiliations, and it does not make any difference if he voted with the opposite party at the next preceding election. In Cook county only a three-fourths vote is required for a convention to elect a candidate whose name does not appear on the primary ballot, and in other counties such a nomination can only be made by a four-fifths vote. In counties other than Cook provisions are made for the election of primary committeemen and for their terms of office, but as to that county there are no such provisions. In Cook

county candidates for mayor and alderman must make the payments hereinbefore mentioned, while candidates for the same offices outside of Cook county are not required to make such payments; and there is no provision in Cook county for the exercise of the legislative powers, before referred to, which are to be exercised by the county central committees of other counties. But those provisions have already been held void for other reasons.

There are a number of other differences in the provisions applicable to Cook county and the other counties in the State, but enough have been noted for the purposes of this decision. Although the whole act relates to primary elections and nomination of candidates for office, it constitutes practically two separate acts divided by section 64, which excludes the prior sections and provides that subsequent sections only shall be in force in counties having a population of 125,000 or over. Cook county is the only county having that population, and as Cook county alone answers the description, it is the county intended, and it makes no possible difference whether the county is described or named in the act. (*Pettibone* v. *West Chicago Park Comrs. supra.*) But, as already stated, it would make no difference if some other counties were included.

It is perfectly clear that there is no such difference between a county which has a population of 125,000 or over and those of less population which calls for or could justify the different provisions of the act. This act differs from acts in which counties have been classified according to population, which classifications rest on substantial differences in situation and needs on account of population. No reason is or can be suggested for excluding the nomination of candidates for judges of the circuit court in the other counties, and including the judges of the circuit and superior courts in Cook county. There can be no reason, founded on population, why the central committees in small counties should determine questions not committed to the discretion of a like committee

in a large county. No reason has been suggested by counsel for defendants why a party having polled ten per cent of the last vote for president within the whole State should have the privileges of the act in small counties, while the same party in a large county should be required to have twenty per cent. Counsel for defendants expressly concede that if there was no way for such a party to put its candidate on the official ballot except the primary law in question, the party might rightfully complain of the act as an unreasonable or arbitrary discrimination against it; but they say the party can get its candidate on the ballot by writing his name in. That is no answer to the complaint of discrimination against that section of a party which is in a large county, if it could be regarded as a practical answer to the complaint in other respects. The law is a local and special law relating to one of the enumerated subjects as to which such a law is absolutely prohibited. We are also of the opinion that it violates the provision of the constitution that elections shall be free and equal, in permitting voters in the State at large outside of Cook county to vote at primary elections by stating their party affiliations, while a voter in Cook county is denied that right if he has voted at the primary election of another party within two years, and also in providing a different basis on which a party in Cook county may avail itself of the privileges of the act from requirements in other parts of the State.

Many other objections to the act have been made and argued, but they are of minor importance and we will not extend this opinion by a reference to them. We are of the opinion that the act of 1905, as a whole, is in contravention of the constitution of this State as special legislation, and is therefore null and void, and that the act of 1901 is still in force.

The time fixed by the committee of the party has passed while the case has been under consideration, and one election to which it might have applied has been held; but voters do not lose any right that can be secured to them in the future

by the failure or refusal of the defendants to act. Neither will any right be lost by the expiration of the time named in any previous act for holding a primary on account of the failure of any committee or authority to call or give notice of any primary under such previous act. We will therefore fix upon Saturday, April 21, 1906, in accordance with the prayer of the petition, for holding a primary of the party represented by the relator for nominations for any election to which it may properly apply.

The writ of *mandamus* is therefore awarded in accordance with the prayer of the petition.       *Writ allowed.*