(Nos. 19920, 19921, 19922, 19923, 19924
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES PATTEN, Plaintiff in Error.—THE PEOPLE, Defendant in Error, *vs.* BOB KURFIRST, Plaintiff in Error.—THE PEOPLE, Defendant in Error, *vs.* PAUL A. FISCHER, Plaintiff in Error.—THE PEOPLE, Defendant in Error, *vs.* FRANK SPINUZZA, Plaintiff in Error.—THE PEOPLE, Defendant in Error, *vs.* LLOYD FRAVEL, Plaintiff in Error.

*Opinion filed February 21, 1930.*

KIRKLAND, FLEMING, GREEN & MARTIN, (WEYMOUTH KIRKLAND, WALTER E. TINSLEY, and WILLIAM H. SYMMES, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and SAMUEL A. ETTELSON, Corporation Counsel, (MARTIN H. FOSS, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error, James Patten, Bob Kurfirst, Paul A. Fischer, Frank Spinuzza and Lloyd Fravel, were each separately charged in the municipal court of Chicago, by information, with operating a motor vehicle on the public highway in the city of Chicago without first procuring a license for the same, in violation of section 9 of the Motor Vehicle act. (Smith's Stat. 1927, p. 2388.) Each pleaded not guilty and waived trial by jury, and the cases were consolidated for trial. On a hearing before the court each defendant was found guilty and sentenced to pay a fine of $10 and also the costs, and in default of payment stand committed to the house of correction until the fine and costs shall be worked out at the rate of $1.50 a day or until paid. Upon writs of error from the Appellate Court for the First District the judgments of the municipal court were severally affirmed. Writs of error were severally sued out of this court by plaintiffs in error and the causes are here consolidated for hearing.

The question involved here is whether, upon a proper construction of section 9 of the act as it existed at the commencement of these prosecutions, a license fee is required for the use of a semi-trailer on public highways.

By section 1 of the act the term "motor vehicle" includes "trailers, or semi-trailers pulled or towed by a motor vehicle." Section 2 divides motor vehicles into two divisions, the second of which is "those vehicles which are designed and used for pulling or carrying freight." Section 3 fixes the maximum gross weight to be permitted on the road surface through the axle of any vehicle and the number of pounds per inch of width of tire under one wheel, and paragraph 5 of said section provides that "where trailers are used the length of any vehicle, or vehicles, combined with their trailers, shall not exceed sixty-five feet." Section 5 provides that "all motor vehicles and all trailers or other vehicles in tow thereof, or thereunto attached, operating upon the improved public highways, shall have tires of rubber or some material of equal resiliency," and that defective tires shall not be permitted to be used if so worn or otherwise damaged as to cause undue vibration or undue concentration of the wheel load on the surface of the road.

It is the contention of plaintiffs in error that a license for semi-trailers is not provided for, required or authorized under section 9 of the Motor Vehicle act, for no license fee is fixed as to semi-trailers. Section 9 in full is as follows:

"Sec. 9. All vehicles of the second division as described in section 2 of this act, which are designed or equipped or used for carrying freight, goods, wares or merchandise, and all vehicles of said first division which have been remodeled and are being used for such purposes, and all vehicles of said second division which are used for carrying more than seven persons shall pay to the Secretary of State for each calendar year from and after January 1, 1924, license fees for the use of the public highways of this State at the following rates, to-wit:

"(a) Vehicles having a gross weight of five thousand (5000) pounds and less, including the weight of the vehicle and maximum load, $12.

"(*b*) Vehicles having a gross weight of more than five thousand (5000) pounds and not more than twelve thousand (12,000) pounds, including the weight of the vehicle and maximum load, $22.50.

"(*c*) Vehicles having a gross weight of more than twelve thousand (12,000) pounds and not more than sixteen thousand (16,000) pounds, including the weight of the vehicle and maximum load, $75.

"(*d*) Vehicles having a gross weight of more than sixteen thousand (16,000) pounds and not more than twenty thousand (20,000) pounds, including the weight of the vehicle and maximum load, $100.

"(*e*) Vehicles having a gross weight of over twenty thousand (20,000) pounds, including weight of vehicle and maximum load, $150.

"(*f*) Tractors, traction engines or other similar vehicles used for hauling purposes, except as hereinafter provided shall pay the same fees according to their weight as hereinbefore required in this section of other vehicles. / All trailers and semi-trailers used with a motor vehicle shall pay to the Secretary of State for each calendar year from and after January 1, 1924, license fees for the use of the public highways of this State at the following rates, to-wit:

"(*a*) Trailers having a gross weight of 2000 pounds, and less, including the weight of the trailer and maximum load, $6.

"(*b*) Trailers having a gross weight of more than 2000 pounds, and not more than 10,000 pounds, $25.

"(*c*) Trailers having a gross weight of more than 10,000 pounds, including the weight of the trailer and maximum load, $50."

The facts are not in controversy. All were practically stipulated. Each plaintiff in error operated a motor vehicle called a semi-trailer on the public highways, as charged, without being licensed so to do under the provisions of the Motor Vehicle act and without having applied for and obtained license to operate and without paying a license fee.

The undisputed evidence shows that there is a material difference between a trailer and a semi-trailer. While both are classed as motor vehicles by the Motor Vehicle act, this difference is recognized by the legislature in the portions of the act above quoted. A trailer, as shown by the evidence, is a unit in itself, has four wheels and can be propelled by any power, while a semi-trailer is two-wheeled and is absolutely useless unless it is attached to a tractor truck. The frame of the semi-trailer overlaps the frame of the truck, on the top of which frame is a horizontal turntable or fifth wheel, to which the front end of the semi-trailer attaches, forming a six-wheeled unit. A semi-trailer carries a much less load than a trailer and its price is much less.

Defendant in error contends that all general provisions, terms, phrases and expressions in a statute must be liberally construed in order that the true intent and meaning of the legislature may be fully carried out and cites many cases in support of this rule of construction, among them *People* v. *Fox*, 269 Ill. 300, where this court said: "The rule is elementary that the primary object of construing a statute is to ascertain and give effect to the true intent and meaning of the legislature in enacting it; that it is 'the intention of the law-makers that makes the law.' (*Hoyne* v. *Danisch*, 264 Ill. 467.) For the purpose of ascertaining and giving effect to this intention of the law-makers it is proper to consider the occasion and necessity for the law. * * * Where the spirit and intention of the legislature in adopting the act are clearly expressed and its object and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious legislative intention and result in absurd consequences not contemplated or intended by it. In such cases the literal language of the statute may be departed from, and words may be changed, altered, modified and supplied, or omitted entirely, if necessary to obviate any repugnancy or inconsistency between the language used and

the intention of the legislature as gathered from a consideration of the whole act and the previous condition of legislation upon that subject." This is undoubtedly the correct rule of construction, subject to the proviso of section 1 of chapter 131 of our statutes, "unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute." The intention of the legislature is manifested by, and must be ascertained from, what it has said in the act construed, and not from something the court might surmise the legislature might have intended to say but which it for some reason failed to say.

From a perusal of the Motor Vehicle act as it then existed, it is evident that the legislature by that act intended to classify trailers and semi-trailers as different motor vehicles; that by section 9 its intention is manifest that semi-trailers should pay a license fee and that by that section it intended to fix a license fee for semi-trailers. It is, however, just as manifest that by that section the legislature by some mistake or oversight failed to fix the amount of such fee and that it used therein no language which enables us to determine what amount it intended to fix as such license fee. This section was amended by the legislature in 1929 so as to fix license fees for semi-trailers.

A law must be complete in all its terms and conditions when it leaves the legislature, so that everyone may know, by reading the law, what his rights are and how it will operate when put into execution. (*People* v. *Election Comrs.* 221 Ill. 9.) If the legislature has accidentally or inadvertently failed to express its intention to declare that certain conduct shall constitute a crime or misdemeanor, the court is powerless to correct the error or supply the omission no matter how plainly the conduct in question is within the mischief intended to be remedied by the statute. (*State* v. *Trapp,* 73 So. 255; *State* v. *Palanque,* 62 id. 224.) An act cannot be executed where the language ap-

pears on its face to have a meaning but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate. While it is the duty of the courts to ascertain the meaning of and give effect to every constitutional enactment of the General Assembly, they cannot supply omissions or remedy defects in matters committed to the legislature. (*People* v. *Sweitzer*, 266 Ill. 459.) The legislature having in the act in question failed to fix a license fee for the operation of semi-trailers, plaintiffs in error cannot rightfully be convicted of a misdemeanor in failing to pay a license fee therefor.

The several judgments of the Appellate Court and the municipal court of Chicago here reviewed are reversed.

*Judgments reversed.*