Houghton Mifflin Company, Appellee, v. Continental Illinois National Bank and Trust Company of Chicago, Appellant.

Gen. No. 39,748.

424

Opinion filed January 31, 1938.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellant; CARL MEYER, FREDERIC BURNHAM, DAVID F. ROSENTHAL, and FRANK D. MAYER, all of Chicago, of counsel.

NELSON, SLATER & BOODELL, of Chicago, for appellee; DRENNEN J. SLATER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This case involves a construction of section 9, subd. 3, of the Negotiable Instruments Law. (Ill. Rev. Stat. 1937, ch. 98, § 29, p. 2130; Jones Ill. Stats. Ann. 89.029.)

The material facts are not in dispute. Plaintiff corporation for many years has been engaged in the business of publishing books in Chicago and in connection with its business has carried a checking account with the defendant bank. Plaintiff's bills have been paid by checks drawn on this account, and the salesmen employed by it from time to time have been paid by checks drawn thereon. This suit is based upon the payment by defendant bank of 20 checks for $100 each, which plaintiff contends were paid upon forged indorsements of the respective payees and wrongfully charged to its account. These checks were drawn and executed by three of plaintiff's agents, Prentice F. Lane, C. H. Pierce and Edward T. Allen, who were specially authorized to execute checks. All of the checks, however, were prepared by Elizabeth Scott, a bookkeeper employed by plaintiff, whose duty it was to keep records of financial transactions of plaintiff at its Chicago office, to receive bills payable and to make out checks in payment thereof and in payment of salaries and commissions of salesmen. She was not authorized to sign checks in behalf of the plaintiff. Each of these checks was payable by its terms to the order of a particular salesman who was in the employ of plaintiff, and the checks were executed by Pierce, Allen and Lane upon representations made to them by Elizabeth Scott that the salesmen to whose respective orders the checks were drawn were entitled to be paid the sums

indicated by the checks. After the execution of the checks they were in each case delivered to Elizabeth Scott to be delivered in the usual course of business by her to the respective payees named therein. She did not do this, but on the contrary first indorsed on each of the checks the name of the payee, then her own, then cashed the checks at defendant bank, appropriated the proceeds to her own use and has since disappeared. As a matter of fact, at the time when the checks were drawn no one of the payees was entitled to the amount for which any check to his order was drawn. The indorsement of Elizabeth Scott was without authority and has not been approved or ratified by any of the payees. The total amount of the checks was $1,400, paid by defendant bank and charged to plaintiff's account. Plaintiff's suit was for recovery of the sum thus charged to it, and the trial court, being of the opinion on the undisputed facts that the bank was liable, made a finding in favor of plaintiff and entered judgment against the bank, from which it appeals.

The theory of defendant bank is that under section 9 of the Negotiable Instrument Law these checks were payable to bearer, and that the bank was justified in paying them upon presentation. Subd. 3 of section 9 of the Negotiable Instrument Law, as originally drawn, provided that an instrument was payable to bearer "when it is payable to the order of a fictitious or non-existing person and such fact was known to the person making it so payable." Brannon's Negotiable Instrument Law, Anno., 4th ed., p. 79.

When the Uniform Act was adopted in this State the legislature substituted for the original provision of this subsection the following: "when it is payable to the order of a person known by the drawer or maker to be fictitious or non-existent or of a living person not intended to have any interest in it." By act approved July 2, 1931 (Laws of 1931, p. 679, see Ill. Rev. Stat.

1937, ch. 98, § 29, subd. 3, p. 2130; Jones Ill. Stats. Ann. 89.029), this paragraph was amended to read as follows:

"When it is payable to the order of a fictitious or non-existent or living person not intended to have any interest in it and such fact was known to the person making it so payable, *or known to his employee or other agent who supplies the name of such payee.*"

The construction of this paragraph prior to the amendment was stated by this court in *United States Cold Storage Co. v. Central Mfg. District Bank,* 251 Ill. App. 279, and by the Supreme Court in the same case in 343 Ill. 503. The Supreme Court (under facts not distinguishable from the facts of this case) reviewing the authorities, held the bank was liable. The opinion puts the decision on the ground that the general rule that notice to an agent (while acting for his principal) of facts affecting the character of the transaction is constructive notice to the principal, is subject to an exception that it does not apply when the agent is engaged in committing an independent fraudulent act on his own account and the facts to be imputed relate to this fraudulent act.

The cases construing the section before its amendment are collected and discussed in 27 Ill. Law Review, pp. 564, 565, and 4 University of Chicago Law Review, pp. 670, 672. Bankers urged the law thus announced was unjust and there appears in the record a portion of a pamphlet entitled, "Program of State Legislation Recommended by American Bankers Association, corrected to Jan. 1, 1932," indicating their attitude. The statement is by Mr. Paton, counsel for the association. After giving the exact section 9 as amended by the Illinois Legislature in July, 1931, he says:

"This amendment drafted in the office of the general counsel and approved by the Association, enlarges the definition of bearer paper by including instruments

payable to fictitious persons, *where the employee or other agent has knowledge of the fiction.* Under the existing definition the drawer of a check having no knowledge of the fiction cannot be held responsible for the act of his agent who supplies the name of the fictitious payee. The person mistakenly signing such check believes it is payable to a real person and expects it to be transferred by genuine endorsement. In point of fact, transfer by genuine endorsement is impossible and this places an unfair burden upon the paying bank or a *bona fide* holder.

"The purpose of the amendment is to place the responsibility upon the drawer of an instrument for the acts of his agent who names a fictitious payee without the drawer's knowledge. This is accomplished by treating such instrument as bearer paper transferrable by delivery."

The bank here contends that such was the effect of the amendment. They say, citing authorities such as *Schoellkopf v. DeVry,* 366 Ill. 39, 44, that in seeking the intent of the legislature the courts will look at the evil to be remedied and the object to be attained; that in construing the statute the court may properly refer to the views expressed by individual members of the legislature when the bill was under consideration in order to get the history behind it and to ascertain the wrong which it was intended to remedy. They cite *Moran v. Bowley,* 347 Ill. 148, 154, 155; Moore Statutes and Statutory Construction, vol. 1, Fed. Stats. Anno., 2d ed., p. 63; *Holy Trinity Church v. United States,* 143 U. S. 457–463; and point out that the very fact that a change was made in the phraseology of the law by an amendment creates the presumption that it was intended to change the law as it formerly existed. *United States v. Bashaw,* 50 Fed. 749 (8 C. C. A. 1892); *Watkins v. Dunbar,* 232 Ill. App. 1, 10. More-

over, it is urged that statutes are to be so construed as to give effect to every word, clause and sentence. *Ruda v. Industrial Board*, 283 Ill. 550–553. Defendant quotes the language used by the author of the amendment in explanation of the bill for amendment to the legislature, in substance to the effect that the law as stated in *United States Cold Storage Co. v. Central Mfg. District Bank* was unjust, and that it was the purpose of the amendment to change it. We think these rules of construction applicable and controlling. The amendment has not been construed by our Supreme Court, but a court of New York in the case of *Swift & Co., Inc. v. Chemical Bank & Trust Co.,* 299 N. Y. S. 105, has held this was the effect of the amendment. The opinion by Justice Pecora says:

"The question presented on this motion for summary judgment is whether the rights of the parties are governed by the law of this state or by the law of Illinois. If our laws apply, the plaintiff is entitled to judgment, the check in question having been drawn in Illinois by a dishonest employee of the plaintiff, on the defendant, Chemical Bank & Trust Company in New York, to the order of a fictitious payee, not known to the plaintiff to be such. On the other hand, if the Illinois law controls, the plaintiff is not entitled to recover in view of the fact that the statutes of that state provide that an instrument is payable to bearer 'when it is payable to the order of a fictitious or non-existent or living person not intended to have any interest in it, and such fact was known to the person making it so payable, or known to his employee or other agent who supplies the name of such payee.' . . . Accordingly the court holds that the question whether the check constituted a negotiable instrument payable to bearer must be determined by the laws of Illinois, where the check was drawn. As the check under the Illinois stat-

ute became a bearer instrument, the drawer has no cause of action against the drawee bank which honored the same.''

Plaintiff in its brief points out that the court will not read into an act something that is not there, to which are cited *People v. Patten,* 338 Ill. 385, 170 N. E. 280; *First Nat'l Bank of Palatine v. Hahnemann Institutions,* 356 Ill. 366, 190 N. E. 707; *Barnes v. City of Chicago,* 323 Ill. 203, 153 N. E. 821; *City of Decatur v. German,* 310 Ill. 591, 142 N. E. 252, cases which as applied to the facts of each correctly state rules of law which are neither applicable nor controlling here. Plaintiff states its theory to be: ''That although the 1931 amendment to Section 9 of the Negotiable Instrument Act changed the law in the case of checks made payable to fictitious or non-existing payees, nevertheless it did not make a change with respect to checks payable to payees not intended to have an interest in the checks. In such case it is still the intention of the duly authorized officers which controls and the dishonesty of the defrauding clerk does not supersede the intention of the company's duly authorized agents.''

There is no language in the statute from which such limitation on its meaning can be inferred. This construction is clearly contrary to the purpose for which the amendment was enacted. It was suggested by the trial judge that if the amendment had been given the construction now urged by defendant it would not have been passed by the legislature. This is only a matter of opinion and at that on a thing with which the courts have nothing to do. Our function is to construe the law as it is written, not to make it. Its wisdom or unwisdom is not for the determination of the courts. We hold as a matter of law the plaintiff was not entitled to recover, and the judgment is therefore reversed without remanding.

*Reversed.*

O'CONNOR, P. J., and McSURELY, J., concur.