## ALFRED R. GREENWOOD

*v.*

## GOTTLOB GMELICH, County Treasurer.

*Opinion filed October 24, 1898.*

1. TAXES—*legislative authority must be shown for every tax levy.* Legislative authority must be shown to sustain every tax levy, whether such levy is made by the political divisions of the State or by the State at large.

2. SCHOOLS—*School law must be construed as one entire act.* The School law, although consisting of different articles and sections, must be considered and construed as one entire act.

3. SAME—*township board cannot levy tax for township high school without vote of people.* In view of section 41 of article 3 and section 31 of article 5 of the School law, (Laws of 1889, pp. 277, 300,) a township board of education, created by section 40 of article 3 of the same act, (Laws of 1889, p. 276,) has no power to purchase a high school site or erect a high school building, or to levy a tax to raise money for those purposes, without the authority of a vote of the people.

APPEAL from the County Court of LaSalle county; the Hon. H. W. JOHNSON, Judge, presiding.

This is an application by the county collector of LaSalle county for a judgment against the property of the appellant for taxes, certified to the county clerk, and by him extended upon the tax books of township 33, north, range 1, east of the third principal meridian, as a special tax for the purpose of purchasing a site and building a school house in said township for a high school. Objections were made by the appellant to the entry of judgment against his land. The objections were overruled. Exceptions were taken to the ruling and decision of the county court in overruling the objections. The appellant moved for a new trial, which motion was overruled, and exception was taken to the ruling. Thereupon judgment was entered by the court against the property of the appellant. The present appeal is prosecuted from such judgment.

In March, 1896, at least fifteen days before the regular election of trustees of schools in and for said township 33, a petition of not less than fifty legal voters of said township was filed with the township treasurer thereof, asking the said treasurer to submit to the voters, at the regular election of the trustees then next following, the proposition of voting for or against establishing a township high school for the benefit of said township. On April 11, 1896, being the day for the regular election of school trustees of said township, there was submitted, in due form of law, to a vote of the voters of said township the proposition of establishing a township high school for the benefit of said township. At said election the proposition of establishing a high school was carried, and the result thereof declared according to law. On May 16, 1896, in pursuance of an election called by the trustees of schools in and for said township five members were duly elected as a township board of education; the returns of said last election were canvassed in accordance with law; the members met within the time prescribed by law and elected one of their number president, and elected a secretary; on July 18, 1896, the said township board of education made its certain certificate of levy, as follows: "We hereby certify that we require the amount of twenty-five thousand dollars ($25,000.00) as a special tax for the purpose of purchasing a school site, and for building purposes on the taxable property of our district, viz.: township 33, north, range No. 1, for the year 1896," which certificate was signed by the five members of the township board of education of said township who were elected on May 16, 1896, as above stated.

Said certificate of levy was filed in the office of the county clerk of LaSalle county, and in pursuance thereof the county clerk extended on the books of the collector of the taxes in and for said township a tax on the real estate of the appellant.

ALFRED R. GREENWOOD, *pro se.*

HASKINS & PANNECK, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The main objection relied upon for the reversal of the judgment of the county court is, that the levy by the township board of education of a special tax of $25,000.00 upon the property subject to taxation in said school district for the purpose of purchasing a school site and for building purposes, was void upon the ground that the question of extending and levying said special tax was not submitted to the voters of said township at any election held for that purpose. It is admitted by the appellee, that the tax was extended and levied upon the property of the appellant without any submission of the question of taxation to the voters of said township.

The only question presented for our consideration is, whether the township board of education had the power to levy a special tax for the purpose of purchasing a site for a high school building, and erecting a building thereon for the purposes of a high school, without a vote of the people at an election specially called for taking such vote. The solution of the question presented depends upon the construction of several provisions of the present School law.

Section 1 of article 3 of the School law of 1889 provides, that "each congressional township is hereby established a township for school purposes." Section 3 of the same article provides, that the school business of the township shall be done by three trustees to be elected by the legal voters of the township, as therein provided for. Section 38 of article 3 provides, that "upon petition of not less than fifty voters of any school township, filed with the township treasurer, at least fifteen days preceding the regular election of trustees, it shall be the duty

of said treasurer to notify the voters of said township that an election for or against a township high school will be held at the said next regular election of trustees, by posting notices," etc.    The form of the notice of election named in section 38 is given in the statute, and recites that an election will be held "for the purpose of voting for or against the proposition to establish a township high school for the benefit of township No. ..," etc. Section 40 of article 3 provides, that "if a majority of the votes at such election shall be found to be in favor of establishing a township high school, it shall be the duty of the trustees of the township to call a special election on any Saturday within sixty days from the time of the election establishing the township high school, for the purpose of electing a township board of education, to consist of five members, notice of which election shall be given for the same time and in the same manner as provided for in the election of township trustees. The members elected shall determine by lot, at their first meeting, the length of term each is to serve.    *    *    *    Within ten days after their election, the members of the township board of education shall meet and organize by electing one of their number president, and by electing a secretary.    It shall be the duty of the township board of education, to establish at some central point most convenient to a majority of the pupils of the township, a high school for the education of the more advanced pupils."

Section 41 of article 3 is as follows: "For the purpose of building a school house, supporting the school and paying other necessary expenses, the township shall be regarded as a school district, and the township board of education shall have the power and discharge the duties of directors for such district in all respects." (3 Starr & Curt. Ann. Stat.—2d ed.—pp. 3653, 3654, 3660, 3661).

Section 31 of article 5 of the act of 1889 is as follows: "It shall not be lawful for a board of directors to purchase or locate a school house site, or to purchase, build

or move a school house, or to levy a tax to extend schools beyond nine months, without a vote of the people at an election called and conducted as required by section 4 of article 9 of this act. A majority of the votes cast shall be necessary to authorize the directors to act: *Provided,* that if no one locality shall receive a majority of all the votes cast at such election, the directors may, if in their judgment the public interest requires it, proceed to select a suitable school house site; and the site so chosen by them shall in such case, be legal and valid, the same as if it had been determined by a majority of the votes cast; and the site so selected by either of the methods above provided shall be the school house site for such district; and said district shall have the right to take the same for the purpose of a school house site either with or without the owner's consent by condemnation or otherwise." (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3689).

Section 38 above quoted provides for submitting to the voters of the township the question, whether or not the township shall have a high school or, in other words, whether a township high school shall be established for the benefit of the township. Section 40 provides for the election of five members of a township board of education. By the terms of the School law only three trustees are elected for the purpose of doing the school business of the township. The township board of education, provided for by section 40 of article 3, is a different body from the school trustees. The township board of education, consisting of five members, is for the first time created by the act in section 40. Section 40 makes it the duty of the township board of education to establish, at some central point most convenient to a majority of the pupils of the township, a high school for the education of the more advanced pupils.

The position of the appellee is, that authority is conferred upon the township board of education to purchase a school site, and erect a high school building, without

a vote of the people by sections 38 and 40 of article 3 as above quoted. It is said that, when the voters of the township have voted under section 38 in favor of establishing a township high school, they have thereby voted in favor of conferring upon the township board of education the power to purchase a school site and erect a high school building and levy a tax for that purpose. It is also said that, when the township board of education is given authority by section 40 to establish a high school at some central point most convenient to a majority of the pupils of the township, it is thereby given authority to purchase a site for a high school building, and to erect a high school building thereon, and to levy a tax for the purpose of paying for the same. It is argued, that the power of expending the money of the people in the purchase of the site and in the erection of the building is involved in the duty of establishing a high school, and that no vote of the people is necessary to enable the township board of education to act in such matter. We are unable to concur with this contention in view of the provisions contained in section 41 of article 3 and section 31 of article 5 as above quoted.

Counsel for appellee admit that, independently of said section 41, no express power is given to the township board of education to purchase a school site and to erect a high school building and to levy a tax to raise money for these purposes. But it is said, that such power is implied from the power to establish a high school, as conferred by sections 38 and 40. We do not deem it necessary to discuss the question, whether the power of taxation can be implied from such language as is used in the two sections last named. As a general rule, legislative authority must be shown for every levy of taxes, whether such levy is made by the political divisions of a State, or by the State at large. (Cooley on Const. Lim. marg. p, 518). Cooley, in his work on Constitutional Limitations (marg. p. 520), says: "Those who assume to seize the prop-

erty of the citizen for the satisfaction of the tax must be able to show that that particular tax is authorized either by general or special law. The power inherent in the government to tax lies dormant until a constitutional law has been passed calling it into action, and is then vitalized only to the extent provided by the law." Therefore, when the power of taxation is claimed for a municipal body, the language of the act creating such body and defining its powers and duties should be examined for the purpose of discovering whether there is an express grant of such power. If the terms of the act can be so construed as to amount to an express grant, it is not necessary to search for evidence of an implied grant.

When we examine section 41 of article 3, we find that the township is to be regarded as a school district "for the purpose of building a school house, supporting the school and paying other necessary expenses," and that "the township board of education shall have the power and discharge the duties of directors for such district in all respects." By section 41 the township board of education is given the same power, which is conferred upon the directors of a school district, and is required to discharge the same duties, which the directors of a school district are required to discharge, so far as relates to the building of a school house, supporting the school, and paying other necessary expenses. The power and the duties of the township board of education, being the same as those of the directors of the school district, must necessarily be subject to the same restrictions.

When we turn to section 31 of article 5 of the act, we find it stated that a board of directors cannot lawfully purchase or locate a school house site, or purchase, build or move a school house, or levy a tax to extend schools beyond nine months, without a vote of the people at an election called and conducted in a specified way. Article 3 of the School law is entitled "Townships—Trustees of Schools." Article 5 of the School law is entitled "Board

of Directors." It will not be denied that, under the provisions of section 31 of article 5, the board of school directors would have no power to make the certificate of levy, which was made by the township board of education of township 33, without authority conferred upon it by a vote of the people. (*Beverly* v. *Sabin*, 20 Ill. 357; *Pennington* v. *Coe*, 57 id. 118; *School Directors* v. *Fogleman*, 76 id. 189; *Chicago and Alton Railroad Co.* v. *People*, 163 id. 616).

It is clear to our minds, in view of section 41 of article 3 and section 31 of article 5 of the School law, that the township board of education, created by section 40 of said article 3, has no power to purchase a high school site, or erect a high school building, or levy a tax to raise money for these purposes without a vote of the people. The power of the township board in this regard is assimilated in all respects to the power conferred by the statute upon the board of directors of a school district; and the power can only be exercised upon the same conditions and subject to the same restrictions as are imposed upon said directors.

Because, under section 38 of article 3, the people vote in favor of establishing a high school, they do not thereby indicate their will as to how much money shall be expended for the purchase of a site for a high school building, or how much money shall be expended for the erection of a high school building. It is true, that, by the terms of said section 40, it is made the duty of the township board of education to establish a high school and to establish it at some central point most convenient to a majority of the pupils. But this is a duty imposed upon it without specification as to the manner in which the duty is to be performed. Section 41 was designed to indicate how that duty should be discharged. The fact, that the board of education is authorized to establish the school at some convenient central point, does not necessarily authorize it to buy a particular site for such amount as it may, in its judgment, choose to expend; nor does it

authorize it to erect a school building at such a cost as, in its judgment, seems proper. The voters must be consulted in relation to this matter, and it cannot and should not be left solely to the discretion of the township board of education.

The language of section 40 should be construed in connection with the language of section 41 and the language of section 31, above quoted. Although the School law consists of different articles and different sections, yet it must be considered and construed as one entire act. When any portion of a written law, standing by itself, seems to be of doubtful meaning, it may be made plain by comparing it with other portions of the same law. "The whole is to be examined with a view to arriving at the true intention of each part. * * * If any section of a law be intricate, obscure, or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious intent of another. And in making this comparison it is not to be supposed that any words have been employed without occasion, or without intent that they should have effect as part of the law. The rule applicable here is, that the effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory. * * * One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together." (Cooley's Const. Lim. marg. pp. 57, 58).

There is no conflict between any parts of sections 38 and 40 on the one side, and sections 41 and 31 on the other.

It is perfectly consistent with the duty, imposed upon the township board of education, of establishing at some central point a high school for the benefit of the township, that such board of education should be restricted, in its power of erecting a high school building and levying taxes therefor, by the will of the people of the township as indicated by their votes.

By paragraph 5 of section 26 of article 5 of the School law, it is made the duty of the board of directors of each school district "to establish and keep in operation" for a specified time "a sufficient number of free schools for the accommodation of all children in the district" of certain ages, etc. (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3685). It certainly will not be claimed that, because the duty is thus imposed upon school directors to "establish" free schools, they are thereby given the power to raise by taxation and expend, without the vote of the people, all the money that is necessary to so establish free schools. The word "establish" is no more fruitful in its meaning as used in section 40 of article 3 than in section 26 of article 5.

Section 35 of the School law of 1872 contained similar provisions to those contained in sections 38, 40 and 41 of article 3 of the present School law as above quoted. Indeed, the language used in the last sentence of section 40 and the language used in section 41 correspond exactly with the language used in section 35 of the law of 1872, except that by the terms of the latter law no township board of education was created. In *Trustees of Schools* v. *People*, 87 Ill. 303, after quoting the provisions of section 35 of the School law of 1872, we used this language (p. 307): "The powers and duties of the trustees being, with respect to the high school, the same as those of directors with respect to the district school, it becomes necessary to ascertain what are the powers and duties of directors with respect to district schools."

In *Fisher* v. *People,* 84 Ill. 491, with reference to the language of section 35 of the School law of 1872 as above referred to, we said (p. 494): "To our minds it seems too plain to admit of argument that the language of the paragraph quoted, which gives to the trustees the power and enjoins upon them the duties of directors 'for such district in all respects,' means that, as to such school, they are to have precisely the same powers and exercise the same duties that district directors have and exercise with respect to district schools, to the extent that such powers and duties are practically applicable to a school created, as it is to be, and for the purpose it is designed to accomplish. There are certain powers and duties possessed and exercised by district directors in subordination to the township trustees, which cannot possibly be applicable; and there may be others, also, which, from the difference in the organization of the schools, are inapplicable. But the power to levy taxes for the creation of a fund with which to pay indebtedness lawfully contracted, is as essential to the high school as to the district school, and no reason is apparent why such a power might not be exercised by the trustees, as respects the township, upon the same principle and in the same manner that it is exercised by directors, as respects the district." Here, the township board of education has become substituted for the school trustees as designated in the act of 1872. The case of *Fisher* v. *People, supra,* clearly holds, that the power of taxation is to be exercised by the trustees, or by the board of education created by the act of 1889, in the same manner in which it is exercised by the school directors of a district. As the directors cannot exercise such power of taxation without a vote of the people, it follows of course that the township board of education cannot make such a levy of taxes without a vote of the people.

We are of the opinion, that the county court erred in not sustaining the objection made by the appellant in the

court below. Accordingly, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*