The People *ex rel.* O. B. Wysong, County Collector, Appellant, *vs.* The Chicago and Eastern Illinois Railroad Company *et al.* Appellees.

*Opinion filed December 22, 1915.*

1. Taxes—*when the amount of a road and bridge tax paid in labor cannot be set off against subsequent tax.* The amount paid in labor to satisfy a road and bridge tax levied under the law as it existed prior to its repeal by the Road and Bridge law of 1913 cannot be set off against a road and bridge tax levied under the new law.

2. Same—*when district road tax cannot be levied as a tax on land.* A district road tax assessed under the law as it existed prior to its repeal by the Road and Bridge law of 1913 cannot be levied by the board of supervisors as a tax against land after the taking effect of the new law of 1913.

3. Same—*certificate of amount of road tax must be made on the first Tuesday of September.* The provision of the statute that the certificate of the amount required for road and bridge purposes shall be made on the first Tuesday in September is mandatory, and the action of the commissioners and the time such action was taken must be shown by the record.

4. Schools—*when board of education cannot purchase a school site.* Before the board of education has power, under the second proviso to clause 5 of section 127 of the School law, to select a site for a school house in case no site receives a majority of the votes cast at the election, the question of purchasing a site must have been submitted to the voters and have received a majority of the votes cast at the election. (*Thompson v. School Trustees,* 218 Ill. 540, distinguished.)

Appeal from the County Court of Vermilion county; the Hon. Lawrence T. Allen, Judge, presiding.

John H. Lewman, State's Attorney, Keeslar & Gunn, Thomas A. Graham, Dyer & Dyer, A. A. Partlow, H. A. Swallow, G. A. Ray, and Robert Fisk, for appellant.

Rearick & Meeks, Steely & Steely, Lindley, Penwell & Lindley, and G. B. Hill, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellees filed objections to the application of O. B. Wysong, the county treasurer of Vermilion county, for a judgment and order of sale of their property for taxes. The court sustained certain objections of appellees and the county treasurer has appealed.

A road and bridge tax was levied by the commissioners of highways in Grant, Middlefork, Newell and Ross townships, in said county, before July 1, 1913, under the Road law known as the "labor system." (Hurd's Stat. 1909, chap. 121, secs. 80-124, p. 1928.) Appellee the Chicago and Eastern Illinois Railroad Company paid its taxes under that levy in labor and after said act was repealed and the new Road and Bridge law in lieu thereof went into force, July 1, 1913. (Hurd's Stat. 1913, sec. 169, p. 2153.) In September, 1913, the commissioners in said townships levied taxes for the year 1914 under the new Road and Bridge law. Said appellee was allowed by the trial court a set-off against the said taxes levied under the new law of 1913, in the amount paid by the company in labor for taxes levied in 1913 prior to July 1, for which amount the company had opposed judgment against it. It was error in the court to allow said set-off to the Chicago and Eastern Illinois Railroad Company, and to allow a similar set-off to the other appellees who had paid their taxes in labor under the levy prior to July 1, 1913, in some of those towns. *People* v. *Cairo, Vincennes and Chicago Railway Co.* 265 Ill. 634; *People* v. *Illinois Central Railroad Co.* 265 id. 429; *People* v. *Cairo, Vincennes and Chicago Railway Co.* 266 id. 35.

The court properly sustained the objections of appellees to the district road taxes levied under the old law in force prior to July 1, 1913, in the several townships above named, for the reason that the old law was repealed by the act of July 1, 1913. *People* v. *Illinois Central Railroad Co. supra; People* v. *Chicago, Indiana and Southern Railroad Co.* 265

Ill. 528; *People* v. *Jacksonville and St. Louis Railway Co.* 265 id. 550.

The trial court also properly sustained the objections of some of the appellees to the road and bridge tax in the town of Butler, that the highway commissioners determined and certified the amount of such tax necessary to be raised on August 30, 1913, instead of the first Tuesday in September, 1913, as provided in section 56 of the Road and Bridge act of 1913. (Laws of 1913, p. 547.) The statute is mandatory, and was intended for the protection of the tax-payer by fixing a day certain for him to be heard, if he so desires. The action of the board was therefore illegal. (*People* v. *Toledo, St. Louis and Western Railroad Co.* 266 Ill. 112; *People* v. *Toledo, St. Louis and Western Railroad Co.* 267 id. 142.) The act of 1913 above referred to requires the clerk to keep a record of the proceedings of the commissioners. (*People* v. *Toledo, St. Louis and Western Railroad Co. ante,* p. 472.) Therefore their action, and the time of their action, in determining and certifying the amount of taxes to be levied can only be proved by the record of the board. *People* v. *Madison County,* 125 Ill. 334; *People* v. *Carr,* 231 id. 502.

The record shows that the court sustained the objections of appellees to certain taxes levied by the Westville township high school board of education to pay for a school house site selected by said board. Westville township high school was organized in the spring of 1913 under the provisions of the School law. The first election for members of the board of education was held April 26, 1913. May 3, 1913, a petition signed by one-fifth of all the legal voters of the district was filed with the board, requesting the call of a special election to vote on the propositions to erect a high school building, to issue $35,000 in bonds to pay for the building, and to select a school site. At the election held May 17, 1913, 151 votes were cast for the erection of the building and 427 votes against that proposition;

167 votes were cast for issuing the bonds and 431 against the bonds; 73 votes were cast for the Ellsworth site and 70 votes for the St. Patrick site. On May 19, 1913, the board of education canvassed the votes of the election and selected the Ellsworth property as the site for the new building, secured a written option thereon for $7500 from the owner of the site selected, and passed a resolution levying a tax for said sum to pay for the site. The notice of said election was posted and dated by the board May 5, 1913, specifying that an election would be held in Westville, in said district, for the purpose of "First, voting for or against the proposition of erecting a high school building in said district; second, voting for a site for the said high school building; third, voting for or against the proposition of issuing the bonds of said district for the amount of $35,000, $2500 come due August 1, 1915, and $2500 first of each succeeding year until bonds are paid, said bonds to draw interest at the rate of five per cent per annum." The notice further specified when the polls of the election would open and close.

The question presented for our decision is whether or not, under section 127 of chapter 122 (Hurd's Stat. 1909, p. 2015,) the board of education of said district was authorized by the above facts shown by the record of the board, to make said levy to pay for the school house site. The part of said section material to that inquiry reads as follows:

"The board of education shall have all the powers of school directors, be subject to the same limitations, and in addition thereto they shall have the power, and it shall be their duty: * * *

"Fifth—To buy or lease sites for school houses with the necessary grounds: Provided, however, that it shall not be lawful for such board of education to purchase or locate a school house site, or to purchase, build or move a school house, unless authorized by a majority of all the

votes cast at an election called for such purpose in pursuance of a petition signed by not fewer than five hundred legal voters of such district, or by one-fifth of all the legal voters of such district: *And provided, further,* that if no locality shall receive a majority of all the votes cast at such election, the board of education may, if in their judgment the public interest requires it, proceed to select a suitable school site; and the site so chosen by them in such case shall be legal and valid the same as if it had been determined by a majority of all the votes cast; and the site so selected shall be the school house site for such district; and said district shall have the right to take the same for the purpose of a school house site, either with or without the owner's consent, by condemnation or otherwise."

The second proviso above quoted was added as an amendment to said section in 1908, and prior to that amendment a board of education had no power to purchase or to locate a school site unless authorized by a majority of all the voters voting at an election called for such purpose in pursuance of a petition signed as aforesaid. (3 Starr & Cur. Ann. Stat. 1896, chap. 122, art. 6, sec. 10, p. 3692.) The statute as it existed prior to July 1, 1908, positively and unequivocally gave a board of education no power to purchase or select a school site unless a majority of the votes cast at an election for that purpose authorized the board to do so. The voters of such a district at that time not only had the right and privilege of voting on the proposition of selecting a site, but also on the proposition of purchasing a site. The added proviso has only taken one of those privileges away from the voter,—the privilege of selecting a site,—and then, only, when the voters fail, by a majority vote, to select the site themselves. The statute as amended must be construed as giving the voters of the district the privilege of voting for or against the purchase of a building site, and the board of education cannot, in any case, purchase a site unless authorized by a majority of

the voters voting at an election for that purpose. In this case the record shows that the voters of the district in question never had the privilege of voting on the question for and against purchasing a school house site. The nearest they were privileged to do that under the notice of the election was to vote "for a site for said high school." What interest had any voter, if there were such voters, in voting "for a site for said high school" who was utterly opposed to purchasing or selecting any site whatever? The board had no right to assume that all voters were in favor of selecting some site and of purchasing some site or other and refuse to submit to them the right to vote on the proposition for or against purchasing a school site. The petition and notice, therefore, were defective. The defect is not cured by the showing that a majority of all the votes cast selected the site chosen by the board, nor is there a showing that a majority of all the voters voted on the question to select a site. The positive showing is that a large majority of the voters voting at that election did not want to build a school house and did not vote at all on the question of selecting a site, for the very reason, apparently, that they were in favor of purchasing no school site at all. Therefore the case of *Thompson* v. *School Trustees,* 218 Ill. 540, construing a similar statute for the selection of a site for a township high school, is not applicable to the facts in this case. That case is not in conflict with the cases of *Greenwood* v. *Gmelich,* 175 Ill. 526, and *Board of Education* v. *Carolan,* 182 id. 119, which held that a board has no power to purchase a site for a high school without authority given by a vote of the electors.

We hold that the judgment of the lower court sustaining the objections to the school tax levied for building purposes should be sustained.

The judgment of the county court will therefore be affirmed except as to said amounts allowed to appellees as set-offs against the road and bridge taxes levied against

them under the new law, and as to those matters the judgment is reversed and the cause remanded, with directions to overrule those objections, and for further proceedings in accordance with this opinion.

*Reversed in part and remanded, with directions.*