(No. 12653.—Reversed and remanded.)

John P. O'Connor *et al.* Appellants, *vs.* The High School Board of Education of Evanston High School District *et al.* Appellees.

*Opinion filed April 15, 1919—Rehearing denied June 6, 1919.*

1. Schools—*when proposition to purchase new high school site is not properly submitted.* A proposition to purchase a new high school site in not properly submitted at an election where it is so combined with propositions to build a new high school and for a bond issue that a voter who favors one proposition will, in order to vote for it, have to vote for the others also. (*People* v. *Chicago and Eastern Illinois Railroad Co.* 270 Ill. 594, followed.)

2. Same—*voters must have opportunity to vote on single question of authorizing purchase of new school site.* The authority of a high school board of education to purchase a new school site must be given by a majority vote of the people of the district voting at an election, where the direct proposition to authorize the purchase of a site is expressly submitted to the voters in such a manner that they may vote upon that proposition alone.

3. Same—*power of high school board in selection of school site.* A high school board of education has no power to control or limit the action of the voters in the selection of a school site and the law places no restriction thereon except to require a majority vote to make the selection, but if no site receives a majority of the votes cast the site may be selected by the board, subject to the restriction that it shall be at a point convenient to a majority of the pupils of the township.

4. Same—*proviso to section 38 of School law of 1889 applies to any district coming within its description.* The proviso to section 38 of the School law of 1889, added in 1891, designating what shall constitute a school township in cities lying within two or more townships, is not limited to high school districts thereafter established but applies to any high school district coming within its description, and, although at the time the proviso was enacted the high school was in a village, the proviso operates to create the designated school township upon the incorporation of the village as a city.

5. Same—*high school board cannot call an election to authorize purchase of building or site except upon petition of voters.* Under section 127 of the School law, high school boards in districts having a population of more than 1000 and not exceeding 100,000, although having the powers and duties of school directors, cannot

lawfully call an election for the purpose of authorizing the building of a new high school and the purchase of a site except in pursuance of a petition signed by not fewer than 500 legal voters or by one-fifth of all the legal voters of the district.

6. Same—*School law must be construed as one act.* Although the School law consists of different articles and sections it must be construed as one entire act.

7. Elections—*meaning of constitutional requirement that all elections shall be free and equal.* The constitutional requirement that all elections shall be free and equal means that the vote of every qualified elector shall be equal in its influence with that of every other vote.

8. Statutes—*when proviso may operate as a substantive enactment.* Although the legitimate office of a proviso is not to enlarge the enactment to which it is appended and operate as a substantive enactment, it will be given that effect if such was the plainly expressed intention of the legislature.

9. Same—*the General Assembly cannot bind its successor as to method of repealing an act.* One General Assembly cannot bind its successor as to the specific manner in which it must word an act repealing or modifying a previous act, as one legislature has power to repeal or modify acts passed by a former legislature; and this power may be exercised either by expressly declaring the intention of the legislature to repeal the act or by subsequent repugnant provisions.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Jesse A. Baldwin, Judge, presiding.

Howard T. Wilcoxon, and William Sherman Carson, for appellants.

Wilson, Moore & McIlvaine, (Nathan G. Moore, of counsel,) for appellees.

Mr. Justice Farmer delivered the opinion of the court:

The Appellate Court for the First District affirmed the decree of the circuit court in this case and granted a certificate of importance, upon which a further appeal is prosecuted to this court.

288 — 16

Two bills were filed by appellants in the circuit court but were consolidated and disposed of in one decree. Both bills attacked the validity of two elections held in the Evanston High School District,—one November 6, 1915, the other December 11, 1915,—upon the questions of choosing a new site for a school building and the issuance of bonds to purchase the site and erect the building. The first bill filed contained the necessary statutory requirements for a contest of the election held December 11 and for a re-count of the ballots cast at that election. The second bill filed by the same parties alleged they had previously filed a bill asking, among other things, for a re-count of the ballots; that it contained all allegations necessary to a petition for contesting the election of December 11 and was filed within the time required by statute for contesting elections, but complainants fearing it might not be sufficient to permit all the proceedings of the board in calling the election, and prior to and leading up to the same, to be fully inquired into, the second bill was filed in order that the proceedings pertaining to the abandonment of the present high school site and the selection of a new site might be examined, considered and adjudged with reference to their conformity to law and with reference to their validity. The prayer of the two bills was the same, and they asked that the elections be declared to be null and void and the board of education restrained from preparing or negotiating bonds or using the proceeds of any tax for the purchase of a school house site, except that the first bill prayed for a re-count of the ballots cast at the election held December 11, 1915. The bills were answered, consolidated and heard together. The cause was heard, the ballots produced in court and counted, and the court found and decreed that the new site, called the Ridge avenue site, received a majority of all the votes cast, and the relief prayed for in each of said bills was denied. The complainants prosecuted an appeal to this court, and it was held we had no jurisdiction,

nor had the circuit court jurisdiction, of any statutory contest of the election; also that the public revenue was not directly involved and the appeal should have been taken to the Appellate Court. It was accordingly transferred to that court. (*O'Connor* v. *High School Board,* 278 Ill. 618.) The Appellate Court appears to have understood the decision of this court to be that no relief could be had in equity against any action of the high school board in holding the elections, and reversed the decree of the circuit court and remanded the cause, with directions to that court to dismiss the bills for want of jurisdiction. This court granted a writ of *certiorari,* and the case was again brought here for review. We held that the bills raised questions as to the validity of said elections, other than a statutory contest of the election, of which the court had jurisdiction, and that the errors assigned on the court's refusal to grant the relief prayed for and decreeing that the elections were lawfully called, held and conducted, and that the board was lawfully authorized to purchase the site, issue bonds and appropriate the proceeds, or part thereof, to purchase said proposed site, and dismissing the bill, should have been considered by the Appellate Court. The judgment of the Appellate Court was therefore reversed and the cause remanded to that court, with directions to consider the errors assigned. *O'Connor* v. *Evanston High School District,* 285 Ill. 120.

On the 12th of October, 1915, appellees, the board of education for the high school district, adopted a resolution declaring the present high school site and building unsuitable and inconvenient, and on October 16, 1915, called for an election to be held November 6, 1915, for the purpose, as stated in the notices, of voting for or against the proposition to build a new high school building for said district and upon such new site as might be thereafter selected according to law, and to issue $500,000 in bonds for the purpose of purchasing such new site, when selected, and

of paying the cost of building a new high school building. The ballots were canvassed and both propositions declared to have been carried by a majority of the votes cast. On the 12th of November, 1915, appellees adopted a resolution ordering that an election be held December 11, 1915, for the purpose of selecting a new site for the proposed high school. Notice was given of the election to be held that day for the purpose of selecting a new site for said school building. The ballot used at that election contained a description of three new sites, with a square opposite each one for the voter to designate his choice. The present site was not mentioned but the ballot contained a blank space with a square opposite, presumably to be used by voters who wished to vote for some site other than the three described. The Ridge avenue site was declared to have received a majority of all the votes cast on the question of site. At the election held on November 6, 1915, no site for the proposed new building was voted upon. The notice stated the election was held "for the purpose of voting for or against the proposition to build a new high school building in and for said district upon such new site as may be hereafter selected according to law, and also for the purpose of voting for or against the proposition to issue school building bonds of said district to the amount of five hundred thousand dollars ($500,000) for the purpose of purchasing such new site when selected and of paying the cost of building a new high school building on such new site." A majority of the votes cast at said election were declared to have been in favor of both propositions, and the election of December 11, 1915, was held for the purpose of voting upon the selection of the site.

Appellants contend (1) that the elections held in November and December did not confer any legal right or authority upon appellees to purchase a new site for the school building; that such authority could only be conferred by a vote of the people at an election called and

conducted as required by section 198 of the School law; (2) that the form of the proposition to build on a new site submitted by notice of the election held November 6, 1915, was insufficient and illegal, in that voters were limited and confined to voting upon building on a new site, thereby eliminating from the consideration of the voters the present or old site; (3) both elections were void because there was no petition of voters for such elections preceding the elections; (4) the site chosen is illegal because not centrally located; (5) the election of December 11 was invalid because persons not residing in the high school district were permitted to vote at said election, and under the facts stipulated the result would have been different if they had not been permitted to vote.

It is admitted by appellees that they had no authority to purchase a school house site unless authorized to do so by vote of the people of the district, but they contend they were so authorized by the election of November 6, 1915. This is denied by appellants. Section 91 of chapter 122 of Hurd's Statutes, as amended in 1913, in part reads: "For the purpose of building school houses, supporting the school and paying other necessary expenses, the territory for the benefit of which a high school is established under any of the provisions of this act, shall be regarded as a school district, and the board of education thereof shall, in all respects, have the power and discharge the duties of school directors, for such district." (Laws of 1913, p. 583.) Section 119 of the same chapter as amended in 1915 provides: "It shall not be lawful for a board of directors to purchase or locate a school house site, or to purchase, build or move a school house, or to levy a tax to extend schools beyond nine months, without a vote of the people at an election called and conducted as required by section 198 of this act. A majority of the votes cast shall be necessary to authorize the directors to act. If no locality shall receive a majority of the votes, the directors may select a

suitable site. The site selected by either method shall be the school site for such district." (Laws of 1915, p. 639.)

The first question presented for our consideration is whether appellees were authorized by a vote of the people to purchase a site for a high school building. Appellees adopted a resolution on October 12, 1915, that the present high school site and building were "unsuitable and inconvenient," and on the 16th of October called an election to be held November 6, 1915, for the purpose, as stated in the notices, "of voting for or against the proposition to build a new high school building in and for said district upon such new site as may be hereafter selected according to law, and also for the purpose of voting for or against the proposition to issue school building bonds of Evanston Township High School District to the amount of five hundred thousand dollars ($500,000) for the purpose of purchasing such new site when selected and paying the cost of building a new high school building on such new site." The direct proposition to authorize the purchase of a site was not expressly submitted to the voters, but the appellees contend it was necessarily involved in and covered by the proposition to erect a building "upon such new site as may be hereafter selected" and to issue bonds for purchasing "such new site when selected" and paying the cost of the building. The wording of the proposition submitted to be voted upon at the election November 6 is not clear. As the propositions were phrased, if a voter was in favor of the bond issue to erect a new building but opposed to selecting a new site he would very naturally conclude that he would have to vote against the bond issue in order to vote against a new site. On the other hand, if he was in favor of a new site but opposed to a bond issue to pay for it he would have to vote for a bond issue to pay for it or vote against a new site. The propositions were so interwoven that a voter who favored one proposition would, in order to vote for it, have to vote for the other also. The

propositions of a new building to be paid for by a bond issue and to authorize the purchase of a new site should have been submitted in such manner that a voter would readily understand how to vote for one proposition and against the other if he so desired. It may be, as counsel for appellees insist, that the vote for the proposition to build on a new site when selected and purchase it out of the proceeds of a bond issue would imply authority to purchase, but such authority should not rest on implication. The proposition to authorize appellees to purchase a new site should have been so clearly and unmistakably stated that a voter could vote for or against that proposition alone, without reference to how he wished to vote on the question of erecting a new building and issuing bonds to pay for it. The way the questions were submitted the question of a bond issue was linked with both the propositions to build and to select a new site. It is conceivable that a voter might desire to vote for a new building and bond issue to pay for it, or for a new site but against a bond issue to pay for the new site, preferring that be done by a tax levy. It is also conceivable that a voter might favor a new building to be paid for by a bond issue and oppose the selection of a new site because he preferred that the new building be erected on the old site. It would be difficult to determine how such a person could vote and have his wish given expression and effect. It seems apparent that appellees assumed they had, by their resolution declaring the present site and building unsuitable and inconvenient, made the selection of a new site necessary and eliminated the present site from consideration. At least the propositions submitted to be voted upon would indicate that such was their purpose and intention, and they were so framed as to make it difficult, if not impossible, for voters to vote for a new building without also voting to select a new site. The constitution requires that all elections shall be free and equal, which means that the vote of every qualified elector shall be equal in its

influence with that of every other one. (*People* v. *Election Comrs.* 221 Ill. 9.)   As the propositions were submitted at the election November 6, a voter desiring to vote for one of them and against another had not an equal opportunity and influence with the voter who either favored or opposed all the propositions submitted.

Upon the question whether, in any event, by the election of November 6 appellees were given authority to purchase a school house site, *People* v. *Chicago and Eastern Illinois Railroad Co.* 270 Ill. 594, seems very much in point. In that case an election was held on the questions of erecting a new high school building, to be paid for by a bond issue of $35,000, and the selection of a site. A majority of the votes cast at the election were against erecting a new building and issuing bonds. A majority of the votes cast on the selection of a site were in favor of what was designated the Ellsworth site. The board of education thereupon secured an option on the purchase of said site for $7500 and levied a tax to pay for it, judgment for which was applied for by the collector and objected to by the tax-payer. This court held the statute in positive and unequivocal language made the board's power to purchase or select a school site dependent upon its being authorized to do so by a majority vote of the voters voting at an election held for that purpose. The court said: "The voters of such a district at that time not only had the right and privilege of voting on the proposition of selecting a site but also on the proposition of purchasing a site. The added proviso has only taken one of those privileges away from the voter,—the privilege of selecting a site,—and then, only, when the voters fail, by a majority vote, to select the site themselves. The statute as amended must be construed as giving the voters of the district the privilege of voting for or against the purchase of a building site, and the board of education cannot, in any case, purchase a site unless authorized by a majority of the voters voting at an election

for that purpose. In this case the record shows that the voters of the district in question never had the privilege of voting on the question for and against purchasing a school house site. The nearest they were privileged to do that under the notice of the election was to vote 'for a site for said high school.' What interest had any voter, if there were such voters, in voting 'for a site for said high school' who was utterly opposed to purchasing or selecting any site whatever? The board had no right to assume that all voters were in favor of selecting some site and of purchasing some site or other and refuse to submit to them the right to vote on the proposition for or against purchasing a school site." To the same effect, in principle and substance, are *Greenwood* v. *Gmelich*, 175 Ill. 526, and *Board of Education* v. *Carolan*, 182 id. 119.

The election of November 6 did not authorize appellees to purchase a site nor did the election of December 11. That election was held for the purpose of locating the site, it being assumed the previous election authorized appellees to purchase it when selected.

Some questions are raised which should be decided for the guidance of the board in the event of another election being held to vote on the questions here involved.

The site receiving a majority of the votes cast is designated the Ridge avenue site. It is well to the northern part of the high school district and near the line forming the north boundary of Evanston township and the south boundary of New Trier township. It was stipulated that the present location of the high school is not far from the geographical center of Evanston and a little more than one block from the high school population center. We have been unable to find any statement of the distance the Ridge avenue site is from the present location of the high school building, but from a plat in evidence it appears to be fifteen or more blocks north of the present site. Appellants contend that the site at Ridge avenue could not be legally se-

lected because it is not at a "central point most convenient to a majority of the .pupils of the township." The board of education is only authorized to select a site when at an election held to select a site no locality receives a majority of the votes cast, in which event the board may select a suitable site. Section 86 of the School law makes it the duty of the high school board of education to establish "at some central point most convenient to a majority of the pupils of the township," a high school. This restriction is placed on the selection of a site by the board, and no such restriction is placed on the voters in the selection of a site at an election held for that purpose. Such a limitation was not thought necessary in the selection of a site by the voters, for it can hardly be imagined that a majority of the voters of the district would select a site remote and inconveniently located for the majority of the pupils of the township. The board of education has no power to control or limit the action of the voters in the selection of a site, and the law has placed no restriction upon the selection by the voters except to require a majority vote to make the selection. If no site receives a majority of the votes cast the site may be selected by the board, in which case it shall select a site "at some central point most convenient to a majority of the pupils of the township."

Prior to 1892 Evanston was a village and then included in its boundaries the disputed territory in Niles and New Trier townships. The township of Evanston lies wholly in the now city of Evanston, the organization having been changed from a village to a city in 1892. By act of 1857 the township of Evanston was constituted a township for school purposes and its boundaries described. Two years later some territory was disconnected and attached to New Trier township. In 1882 Evanston high school was established as a high school for Evanston township under the act of 1879. That act did not provide for a board of education to control and manage the high school but such con-

trol and management were in the trustees. In 1890 a board of education was elected as authorized by the act of 1889, consisting of five members, since which time the school has been under the control and management of such board of education. The appellees contend that as the parts of New Trier and Niles townships in dispute were a part of the village of Evanston before and at the time it was incorporated as a city, in 1892, the whole territory automatically became the high school district by virtue of the act of the legislature in 1891.

Section 38 of the School law of 1889 made provision for calling an election to vote for or against the organization of a township high school. That section was amended in 1891 by adding to it: *"Provided,* that when any city in this State, having a population of not less than 1000 and not over 100,000 inhabitants, lies within two or more townships, then that township in which a majority of the inhabitants of said city reside shall, together with said city, constitute a school township under this act for high school purposes." (Laws of 1891, p. 200.) In 1909 the act concerning schools was revised, and the proviso quoted became section 90 of the revised act. It is not contended that when the proviso was enacted, in 1891, it applied to Evanston, which was then a village, and by its terms the proviso only related to cities, but it is insisted that when in 1892 Evanston became a city the act then applied and the whole territory within the city limits became the high school district. Appellants contend that the proviso must be considered in connection with the section to which it is attached,—the organization of high schools,—and it should be limited in its application to township high schools thereafter established; that to construe the provision as contended for by appellees would give it a retroactive effect, which would be unauthorized, because no purpose of the legislature is expressed or can be inferred to make the act retrospective.

At and before the time of its incorporation as a city Evanston had a population of not less than 1000 and not more than 100,000 and lay within two or more townships,— *i. e.,* Evanston, Niles and New Trier. The amendment was attached to section 38 of the act of 1889, which authorized calling an election to vote for or against the organization of a township high school. Aside from the fact that at the time the amendment was enacted, in 1891, Evanston was a village and by its terms the amendment was limited in its application to cities, the amendment accurately describes the situation of Evanston, and provides that in such city the township in which a majority of its inhabitants reside shall, together with said city, constitute a township high school "under this act,"—not "under this section,"— for high school purposes. While it was an amendment in the form of a proviso attached to section 38, its application was not by its terms limited to the section but applied to the act concerning the establishment of township high schools, and though the legitimate office of a proviso is not to enlarge the enactment to which it is appended and operate as a substantive enactment itself, it will be given that effect if such was the plainly expressed intention of the legislature. (*In re Day,* 181 Ill. 73.) In the case of *Trustees of Schools* v. *People,* 161 Ill. 146, and *People* v. *Bruennemer,* 168 id. 482, the proviso was given the effect of independent legislation. In the revision of the School act in 1909 the proviso was re-enacted as section 90.

Counsel for appellants concede the legislature had the power to change or modify the district, but argue that before that effect will be given the amendment it must clearly appear that such was the intention, and further contend the language of the enactment will not admit of that construction; that if the legislature had intended it to apply to high schools already established it could have so indicated by the addition of a few words. With as much force it may be said if the legislature had intended the act should

apply only to districts thereafter established it could have said so. We see no valid reason for restricting the benefits of the legislation to districts thereafter established, and its language does not, to our minds, indicate that it was so intended. As we view it, the intent was that it should apply to any high school district that came within its description, and the enactment of the proviso as independent legislation in the revision of 1909 would seem to indicate such was the intention of the legislature.

Our attention is called to the act of 1857 changing the boundaries and the name of the township from Ridgeville to Evanston and to constitute the same a township for school purposes. The act contained a provision that no act, general or special, relating to school purposes, afterward enacted, should affect or repeal any of the provisions of that act unless specifically mentioned in the repealing act. The act of 1857 was not mentioned in the act of 1891. We do not understand one General Assembly can bind a subsequent one as to the specific manner in which it must word an act repealing or modifying a previous act. The legislature has power to repeal or modify acts passed by a former legislature, and this power may be exercised either by expressly declaring its intention or where the intention is inferred from subsequent repugnant legislation.

We are disposed to hold that the disputed territory in Niles and New Trier townships is a part of the high school district, and the residents of that territory had a right to vote at the elections.

Appellants contend both elections were void because they were not called pursuant to a petition of voters, as required by section 127 of the School act. It was stipulated that no petition of voters preceded the call of the election, but appellees contend that section 127 does not apply and that no petition was necessary. If the provisions of section 127 were applicable then the elections were unauthorized and invalid because no petition of voters was

filed asking that an election be called. The basis of appellees' contention is that they constitute a township board of education, which was created under the act of 1889, consisting of five members, and that such a board is to be distinguished from boards of education for districts having a population of not less than 1000 nor more than 100,000, consisting of six members and a president; that the powers of the appellee board of education are to be found in the statute relating to school directors, and it makes no provision for a petition for such election. (Chap. 122, sec. 91, *supra.*) Section 123 is as follows: "In all school districts having a population of not fewer than 1000 and not more than 100,000 inhabitants, and not governed by special acts, and in such other districts as may hereafter be ascertained by any special or general census to have such population, there shall be elected a board of education to consist of a president, six members, and three additional members for every additional 10,000 inhabitants." Section 127 provides: "The board of education shall have all the powers of school directors, be subject to the same limitations, and in addition thereto they shall have the power, and it shall be their duty: * * * To buy or lease sites for school houses with the necessary grounds: *Provided, however,* that it shall not be lawful for such board of education to purchase or locate a school house site, or to purchase, build or move a school house, unless authorized by a majority of all the votes cast at an election called for such purpose in pursuance of a petition signed by not fewer than 500 legal voters of such district, or by one-fifth of all the legal voters of such district."

When the high school district was organized its management passed under the control of the board of education, with powers and duties of school directors for the district. The high school district has a population of more than 1000 and not exceeding 100,000, and if the proviso to section 38 applied it would seem sections 123 and 127

applicd also.   We are of opinion that the appellee board
of education, as successor to the school directors, is subject
to the provisions of the statute referred to, and could not
lawfully call the election except pursuant to a petition of
voters, as provided by section 127.   It was held in *Green-
wood* v. *Gmelich, supra,* that although the School law con-
sists of different articles and scctions it must be construed
as one entire act.

The judgment of the Appellate Court and the decree
of the circuit court are reversed and the cause remanded
to the circuit court for further proceedings and decree in
harmony with the views expressed in this opinion.

*Reversed and remanded.*

---

(No. 12209.—Reversed and remanded.)
CHARLES PAULY *et al.* Defendants in Error, *vs.* THE
COUNTY OF MADISON, Plaintiff in Error.

*Opinion filed April 15, 1919—Rehearing denied June 4, 1919.*

1. COUNTIES—*the duty of building court houses is imposed on
boards of supervisors.*   An imperative duty is imposed by law upon
boards of supervisors to provide court houses for use of counties.