# Harry W. Baker et al., Appellants, v. County of Du Page et al., Appellees.

## Gen. No. 7,040.

1. Schools and school districts—*authority of directors in matter of school sites, new buildings and bonds as statutory.* The authority of boards of directors to select school sites, build new buildings and issue bonds in payment thereof is governed entirely by statute.

2. Schools and school districts—*submission of separate propositions on same ballot.* The question of bonding for school building purposes and several separate propositions for the selection of building sites were properly placed upon the same ballot.

3. Schools and school districts—*when directors without authority to select schoolhouse site.* Where neither the proposition submitted at a school district election to purchase a new schoolhouse site nor either of the other propositions for the selection of specific sites received a majority of all votes cast as required by section 119, ch. 122 (Cahill's Ill. St. ch. 122, ¶ 127), the directors were without authority to select a site.

4. Schools and school districts—*when bill not sufficient to show right to relief in matter of bond issue.* Allegations in a bill that the voters in a school district election were induced to vote for a bond issue by representations made prior to the election that there was to be a new site in the east end of the district and that the bonds were to be issued to purchase the site and build a building thereon and that, if they had known that the bonds could not be issued to purchase such a new site, they would not have voted for the bond issue, were not sufficient to show such fraud or misrepresentation, as would entitle complainants to the granting of the prayer of their bill that the election be annulled or, if the bonds might properly be used to provide an additional site and to build thereon, that defendants be required to select a new site in the east end of the district and, on their failure to do so, that they be restrained and enjoined from issuing the bonds.

5. Schools and school districts—*what does not entitle voters at school election to relief on ground of fraud.* The fact that the voters at an election involving the issue of bonds for school building purposes did not understand the law does not entitle them to relief on the ground of fraud.

6. Schools and school districts—*when bill not sufficient to entitle taxpayers to relief in matter of bond issue.* Taxpayers in a school district who sought to have a bond election annulled or to

have the school authorities required to use the bonds for the purchase of a new site in the east end of the district and to build thereon or to have them enjoined from issuing the bonds, the bill being based upon allegations that the voters were misled into voting for the bond issue under a belief that they would be used for building upon such a new site, were not entitled to such relief where the bill contained no allegation that the directors or any other public official or private individual ever made any representation to any one concerning the powers of the directors under the propositions contained upon the ballot or as to any construction placed upon the meaning of the proposition by the directors or any one else.

7. SCHOOLS AND SCHOOL DISTRICTS—*when use of bonds to build on existing site not enjoined.* Where the proposition to bond contained in the ballot used at a school election was merely to issue bonds "to the amount of $20,000 for building purposes," complainants were not entitled to have the authorities enjoined from using the bonds to build upon the existing site for the reason that to so build would be inequitable.

8. SCHOOLS AND SCHOOL DISTRICTS—*right to relief against district treasurer and county in matter of bond issue.* Neither the treasurer of a school district nor the county has any authority to issue school district bonds, and no relief can be granted as against them under a bill seeking either to have the proceeds of the bonds used in a certain way or to have the issuing of the bonds enjoined.

9. SCHOOLS AND SCHOOL DISTRICTS—*when directors can act officially.* Under the statute (Cahill's Ill. St. ch. 122, ¶ 119), school directors can act officially only at a regular or special meeting properly called, and any business transacted at any other time or place is illegal and not binding on the district.

10. SCHOOLS AND SCHOOL DISTRICTS—*what not sufficient to authorize injunction against directors.* The mere fact that school directors have stated unofficially that they intend to use a bond issue, voted by the district, in a certain way, alleged to be improper, is not sufficient to authorize an injunction restraining them from doing so.

Appeal from the Circuit Court of Du Page county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed February 23, 1922.

JULIUS LIMBACH, for appellants.

MICHAEL KROSS, for appellees; WILLIAM F. STRUCKMANN, of counsel.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellants, Harry W. Baker and five other electors, residents and taxpayers of School District No. 45 in Du Page County, filed their bill in the circuit court of that county against the appellees, the County of Du Page, the Board of School Directors of School District No. 45 of said county, the treasurer of said school district, and the president, secretary, and one member of said board of school directors, in which they prayed for certain relief against the appellees, as hereinafter recited. A demurrer was sustained to the bill, appellants elected to stand by the bill, the bill was dismissed and this appeal was prosecuted.

The bill alleged, in substance, that on August 20, 1921, the board of directors of said school district held an election in said district. The ballot is set out *in hæc verba* and contains six propositions. The first one was to purchase an additional school site in said district, and it received 228 votes for and 217 votes against. The next three propositions were for specific sites. The first site, being the second proposition, received 223 votes for and 246 votes against. The second site, being the third proposition, received 57 votes for and 241 votes against. The fourth proposition left the description of the site vacant so that the voter could write in the description of any site which he desired to vote for, but no votes were cast on the fourth proposition. The fifth proposition was to issue the bonds of the district for $20,000 for building purposes and received 398 votes for and 90 votes against. The sixth proposition was to authorize the board of directors to levy a tax of 3 per cent for educational purposes and 1 per cent for building purposes and received 394 votes for and 91 votes against.

The bill further alleged that 514 votes were cast at said election and that the first proposition to purchase an additional site was wrongfully and unlawfully

placed on the ballot, and for such cause was lost for want of a sufficient number of votes, and that all three propositions for the selection of a new site were lost for the same reason.

The bill further alleged that the present school is located at the extreme west end of the district and the children who live at the east end of the district, in order to reach the school, are required to travel about one mile which is intersected by two dangerous grade crossings of steam and electric railroads which are a constant menace to the children, and for this reason the project of additional school facilities was agitated on the promise that a schoolhouse would be built at the east end of the district to accommodate the lower grades attended by the very small children; that the sites voted for, as they appeared on the ballot, are sites, both of which are in the east end of the district and were voted for to relieve the congestion at the present school and for the further reason that the present school and its facilities are inadequate for the necessities of the district; that 228 electors who cast their votes to purchase an additional site likewise cast their ballots for the issue of bonds for building purposes, believing that the directors would have the power to purchase a site from the proceeds of the bond issue in the event that a selection was lawfully made by ballot, or by the defendants.

The bill further alleged that the directors have no right to purchase a site with the proceeds of the bond issue proposed as it appeared on the ballot; that the electors were imposed upon, and by the form of the ballot were led to believe that the bond issue was to be used to pay for a new site, whereas this was lawfully impossible even though the first and second or third propositions had been carried by a majority of all the votes cast; that had the 228 electors known that the proceeds of the bond issue could not lawfully be used to purchase a new site they would not have voted

for the bond issue; that the ballot is further faulty and defective for the reason that by inserting the first or last propositions it was unlawful and misleading, because it called for a bond issue vote in support of a pretended proposition to purchase a new site, whereas the same was lawfully impossible, and the 228 electors were, misled and deceived into casting their ballots in support of the bond issue which otherwise they would not have done; that the ballot contained various propositions joined in one ballot, and the several propositions so submitted were not in manner and form as required by law, in that the tax propositions ought to have been submitted on a separate ballot and the several propositions stated in the alternative, and that the ballot did not comply with sections 189 and 198 of chapter 122 of the Statute (Cahill's Ill. St. ch. 122, ¶¶ 313, 322).

The bill further alleged that notwithstanding the electors, by their votes, failed to select a new site in the east end of the district, the defendants have stated and given out that they will not exercise their statutory discretion to select a new site in the east end as by law they may do, but on the contrary they have stated and given out that they would issue the bonds and use the proceeds thereof to increase the building and facilities of the present school in the west end of the district, which designed and threatened action would be wholly contrary to the intent and purpose of the election and would tend to oppress and wrong the electors and their children residing in the east end, and would be contrary to equity and good conscience and tend to the manifest prejudice and injury of the complainants; that the form of the ballot was not clear, and the voter desiring to vote for the new site had the right to assume that the bond issue was being voted and was to become effective only in the event that the new site carried; that the propositions voted upon and their form indicated that the purpose of the

bond issue was to purchase a new site and build thereon.

The prayer of the bill was that the election be annulled and held for naught, but if the court should decide that the bond issue might properly be used to provide an additional site and build thereon, that the defendants be required to select a new site in the east end of the district and, on their failure so to do, they be restrained and enjoined from issuing bonds. There was a prayer for general relief.

The authority of boards of directors to select school sites, build new buildings, and issue bonds in payment thereof is governed entirely by statute. There is no claim that the preliminary requirements of the statute were not complied with in this case. The relief sought is based entirely upon the form of the ballot and the representations made concerning the purpose of the election and the object to be attained.

Section 119, ch. 122, Hurd's Rev. St. 1919, page 2724 (Cahill's Ill. St. ch. 122, ¶ 127), provides that elections to be called for the purpose of selecting schoolhouse sites shall be called and conducted as provided in section 198 of the same chapter. (Cahill's Ill. St. ch. 122, ¶ 322.) Section 198 specified the form of the notice and the time and number of places where the notices are to be posted. No form of a ballot is provided by the statute except that section 198 provides that the notice shall state that the election is called for the purpose of voting for or against the proposition to issue bonds, etc. This provision, taken in connection with section 119, applies to a proposition to select a site and build a building. In *People v. Sullivan*, 247 Ill. 181, as to the form of the ballot, it was said: "If the ballot had been prepared 'For the establishment of a Township High School' and 'Against the establishment of a Township High School' and a square had been left after each proposition, in which the voter could indicate by a cross how he voted upon the ques-

tion, it would have been free from ambiguity. While the law did not require that the ballot should be prepared in the form suggested, it should have been so prepared, whether furnished by the election officers or provided by the voters themselves, that it would not be uncertain and ambiguous, but would indicate with reasonable certainty how each voter intended his ballot to be counted.''

Section 112, ch. 121, Hurd's Rev. St. 1919, page 2603 (Cahill's Ill. St. ch. 121, ¶ 121), which governs the borrowing of money for road purposes, provides that when a question is submitted to a vote that there shall be a separate ballot. In construing this section the Supreme Court in *People v. Elledge,* 281 Ill. 592, on page 594, defined a separate ballot as follows: ''It is clear from the wording of this section that the legislature did not intend a separate or special ballot for each proposition to be submitted to the voters. This is the reasonable and natural construction of this section, and it has been assumed, so far as we know, by this court and all public officials that had to do with the question, that all propositions should be printed upon a ballot separate from the ballot upon which the candidates' names were printed but all propositions upon the same ballot. (See *Harvey v. Cook County,* 221 Ill. 76; *People v. Myers,* 256 Ill. 529.) In each of those cases more than one proposition was submitted to the voters on the same ballot. The word 'separate,' as used in this portion of the statute, means a ballot separate from the ballot for candidates. This is the only common-sense construction of these provisions of the ballot law. To hold otherwise would greatly burden the election officials and tend to mislead the voter by placing so many ballots in his hands to be voted on at the same time.'' See also *People v. Chicago & E.*

*I. R. Co.*, 296 Ill. 246; *Wood v. Road Dist. No. 6*, 296 Ill. 405.

Under the above authorities we conclude that the form of the ballot submitted at this election was in conformity with the rules of law and that there was no error in submitting the various propositions on the same ballot. There was no ambiguity or uncertainty in the ballot. The propositions to be voted on were clearly stated and the voter had the right and opportunity to vote for or against each one of them as he saw fit.

Section 119, ch. 122, provides that it shall not be lawful for a board of directors to purchase or locate a schoolhouse site, or to purchase, build or move a schoolhouse without a vote of the people, and that a majority of the votes cast shall be necessary to authorize the directors to act, and if no locality receives a majority of the votes the directors may select a suitable site. There were 514 votes cast at this election, and, therefore, 258 votes constituted a majority. The first proposition was to purchase an additional schoolhouse site and it only received 228 votes, which were not a majority and, therefore, the proposition was lost. The second, third and fourth propositions were for the selection of a specific site and as no specific site received a majority of votes no site was selected by the voters, and because of the defeat of the first proposition the directors were without authority to select a site as provided in section 119. *People v. Chicago & E. I. R. Co.*, 270 Ill. 594.

The sixth proposition, which was for an increased tax, was carried and is not in controversy in this case, so the only remaining question is as to the force and effect of the fifth proposition, which was the issue of bonds in the sum of $20,000 for building purposes, which proposition received a majority of the votes cast. In support of the bill the appellants contend that

the allegations are sufficient to show that the voters were misled and deceived, and that such deceit amounted to a fraud which entitled appellants to the relief sought. The deceit consisted in the facts, as alleged in the bill, that 228 voters, who voted in favor of a new site and in favor of the bonds, were led to believe, by certain representations made prior to the election, that there was to be a new site in the east end of the district and that the bonds were to be issued to purchase the site and build a building thereon, and if they had known that the bonds could not be issued to purchase a new site in the east end of the district they would not have voted for the bond issue.

In *Fish v. Cleland*, 33 Ill. 238, on page 243, it is said: "A representation of what the law will or will not permit to be done is one upon which the party to whom it is made has no right to rely, and, if he does so, it is his own folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law and it is always understood as such." In *Dillman v. Nadlehoffer*, 119 Ill. 567, the court, on page 576, used the following language in regard to statements relative to the legality of certain patents: "With respect to their legality or validity, that necessarily involves a mere legal opinion, about which one nonprofessional person could judge as well as another. It is well settled, that ordinarily one is not liable for false representations respecting a mere question of law." In *Upton v. Tribilcock*, 91 U. S. 45, the Supreme Court of the United States cited with approval the quotation from *Fish v. Cleland* and added: "The law is presumed to be equally within the knowledge of all parties." In *McCreery v. Burnsmier*, 293 Ill. 43, there was a contested election case between two candidates for mayor of Mason City, and while it is in no way similar to the questions at issue in this case, yet cer-

tain rules were announced which are applicable here. On page 49 the court said: "The intention of the voter must be determined by the ballot as cast and not be extraneous evidence of the voter as to what his intentions were when he cast his ballot." And on page 51 it is said: "We think it would be a dangerous precedent to establish the rule that the voter intended to do otherwise than what he actually did do, or to allow him to testify that he did not intend to do what he actually did do." And again on page 53: "Evidence as to what was the general understanding of the people of Mason City as to who were the candidates for mayor was properly excluded by the court. The witnesses were permitted to detail conversations and declarations of citizens generally on that subject. That was the utmost that appellant could expect in the way of evidence on that subject. The mere conclusions of witnesses on that subject are highly improper." The allegations of the bill were not sufficient to constitute either such fraud or misrepresentations as would entitle appellants to the relief sought.

In several places it is alleged in the bill that the directors had no right to purchase a site with the proceeds of the bond issue as it appeared on the ballot, and that this was lawfully impossible, even though the first and second or the third propositions on the ballot had been carried by a majority of all of the votes cast, while in the prayer of the bill it is alleged that if the court should decide that the bond issue may properly be used to provide an additional site and build thereon, that the defendants be required to select a new site in the east end, and, on their failure so to do, they be restrained and enjoined from issuing the bonds. The question of the authority of the defendants to use a part of the proceeds of the bond issue to purchase a site is not properly before this court for the reason that the proposition to select a new site did not receive a majority of all votes cast, and for that

reason the directors had no authority to select a new site in any part of the district. If they had no right to select any site, it naturally follows that no part of the bond issue could be used to pay for any site they might select. The fact that the voters did not understand the law does not entitle them to relief on the ground of fraud. The ballot was clear and specific. There was nothing to mislead the voter, and simply because the directors cannot do what some of the voters want done is no ground for holding the election to be void. Another reason why the appellants are not entitled to this specific relief is that there is no allegation in the bill that the directors, or any other public official or private individual, ever made any representation to any one concerning the powers of the directors under the propositions contained upon the ballot, or as to any construction placed upon the meaning of the proposition by the directors or any one else.

The bill alleges that, notwithstanding the electors by their votes have failed to select a new site in the east end of the district, the defendants have stated that they will not exercise their discretion to select a new site in the east end, but that they will issue the bonds and use the proceeds to increase the buildings on the present site in the west end, and it is alleged that this should be enjoined for the reason that it is inequitable. We do not think appellants are entitled to relief under this allegation of the bill. The issue of bonds was not limited to the erection of a new building on a new site, but the proposition on the ballot was to issue bonds "to the amount of $20,000 for building purposes." We do not deem it necessary to decide whether the defendants had a right to use the proceeds of the bond issue to increase the buildings and facilities of the present school in the west end, for the reason that the allegations of the bill are not sufficient in other respects even if it should be conceded that the directors

had no such right. The defendants are the County of Du Page, the treasurer of the district, the board of directors, and the president, secretary, and one member of the board who are made parties defendant as such president, secretary and member. There is no allegation that states any cause of action against the county. It had nothing to do with the issue of the bonds. It was a separate corporation from the school district. It could not issue school bonds and could only act through its board of supervisors, hence there could be no relief against the County of Du Page. Neither had the treasurer of the district anything to do with the issue of the bonds. He had no authority to issue them or cause them to be issued. Under section 196, ch. 122, Hurd's Rev. St. 1919, page 2752 (Cahill's Ill. St. ch. 122, ¶ 320), his only duty was to register, number and countersign them after they were issued and receive the proceeds thereof. He had nothing to do with the spending of the money after they were issued, and for that reason there could be no relief against him. The only defendants to whom the allegations of the bill could possibly apply were the school directors and the individual members thereof. Section 111, ch. 122, Hurd's Rev. St. 1919, page 2721 (Cahill's Ill. St. ch. 122, ¶ 119), provides that the directors shall transact no business except at a regular or special meeting, therefore the directors can only act officially at a regular or special meeting, properly called. Any business transacted at any other time or place is illegal and not binding on the district. It is not alleged that any action was ever taken by the directors at either a regular or special meeting. The allegation is that they have stated and given out that they will issue the bonds to increase the present building. The mere fact that they may have stated or given out is not sufficient to authorize an injunction. In case they should take some official action to issue the bonds and use the money on the present site, and such use is

unlawful and a bill is filed with proper averments, the question here raised might entitle appellants to equitable relief, but the bill as drawn was not sufficient, even under its general prayer for relief. *Van Zanten v. Van Zanten*, 269 Ill. 491.

The demurrer was properly sustained and the decree dismissing the bill will be affirmed.

*Decree affirmed.*