HERMAN HYSLER, Appellee, *vs.* SPRINGFIELD SCHOOL DIS-
TRICT No. 186 *et al.* Appellants.

*Opinion filed April 20, 1916.*

ELECTIONS—*when school propositions must receive majority of
all votes cast at election.* Where the propositions to acquire a new
site, build a school house and issue bonds are submitted to a vote
of the people at a regular election at which county, State, city or
township officers are voted for, and the different ballots are all
placed in one ballot-box and only one set of poll-books kept and
returns made, the propositions, in order to carry, must receive a
majority of all votes cast at the election and not merely a majority
of the votes cast on the propositions. (*People* v. *Brown,* 189 Ill.
619, distinguished.)

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of Sangamon county; the Hon. JAMES A. CREIGHTON,
Judge, presiding.

M. U. WOODRUFF, H. L. CHILD, CLINTON L. CONK-
LING, and CHARLES B. WOOD, (WILSON, WARREN & CHILD,
CONKLING & IRWIN, and WOOD & OAKLEY, of counsel,)
for appellants.

B. L. CATRON, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Sangamon
county, praying that Springfield School District No. 186,
and its board of education and officers, be restrained from
purchasing a new school house site and from building a
school house thereon. The circuit court denied the injunc-
tion and dismissed the bill for want of equity. The Ap-
pellate Court for the Third District, on appeal, reversed the
decree and remanded the cause, with directions to grant the
injunction as prayed for.

Most, if not all, of the facts, so far as they relate to
the questions necessary to be decided in this cause, are un-

disputed. Said school district includes all of the city of Springfield and certain adjoining territory. The whole district by the last Federal census had more than 35,000 and less than 100,000 inhabitants. It is acting under a special charter. Its affairs are managed by a board of education of seven members elected by the people and vested with the powers and duties provided by the general school laws of the State for such boards of education. Schools are maintained in many buildings, one being on what is known as the Douglas site. Some dissatisfaction arose as to the fitness of that building and the location of its grounds for school purposes. March 2, 1914, a petition signed by not fewer than 500 legal voters was filed with the board of education, asking that an election be called to submit to the voters the proposition of acquiring, by purchase or condemnation, as a school site for said school, certain premises located about a third of a mile from the old site and of building a school house on said proposed site. Other residents of the district apparently preferred the old site, as another petition, signed by not fewer than 500, was filed on March 20, asking the board to submit to the voters the proposition of building a new school house on the old site. We deem it unnecessary to specify all the various proceedings of the board with reference to these two petitions. March 20, 1914, however, the board authorized an election on the propositions to acquire a new site and to build a school house thereon and also on the proposition of issuing bonds to pay for the same, and called an election for April 7, 1914, to vote on said three propositions. No election was ordered on the question of building a new school house on the old site. March 21 the board ordered that the names of the candidates for members of the board of education be certified to the board of election commissioners of the city of Springfield, to be placed on the ballots used at the election to be held in that part of the school district within said city on April 7, 1914. On said April 7 an election was

held in the entire district as to said three propositions and also for three members of the board of education. In that part of the school district outside the city of Springfield each voter was given one ballot containing the names of candidates for members of the board of education for the three places to be filled and another ballot containing the three school propositions. The voters within the city of Springfield were given, in addition to these two ballots, a ballot containing the names of candidates for township officers and another ballot upon the question whether the city should become anti-saloon territory. The proof shows the limits of the city of Springfield are coincident with those of Capital township. In the city the election was conducted under the direction of the board of election commissioners. Only one set of ballot-boxes was used for all the ballots and one set of poll-books and returns made. According to the poll-books 22,901 voters voted at said election in said school district. The ballots cast on the school propositions were as follows: Acquiring new site: for, 9152; against, 7267; total, 16,419; building new school house on the new site: for, 8860; against, 6865; total, 15,725; issuing bonds: for, 8759; against, 7296; total, 16,055. The county court thereafter entered an order to the effect that each of the said three propositions had failed to receive a majority of the votes cast at said election. At a meeting of the board of education August 4, 1914, that board adopted a resolution declaring the proposed new site for the Douglas school to be the legally located site and appointed a committee to procure options on land, which the committee proceeded to do. The board decided not to issue bonds for said building but to take the necessary amount of money from the building fund. October 22, 1914, appellee, as a tax-payer in the district, filed this bill, setting forth, among other things, that the board had unlawfully refused to submit the proposition of building a new school house on the present site; that the ballots were so prepared and printed that only one site

was submitted to the voters; that it did not appear from the records of the board that ten days' notice was given; that the board was not authorized by a majority of the votes cast at the election to acquire a new site and build thereon. He therefore prayed an injunction, as heretofore stated.

The principal question necessary for decision in this case is whether a majority of the votes cast at the election on the school propositions was in favor of said propositions.

Section 119 of chapter 122 of the Revised Statutes of Illinois provides as follows: "It shall not be lawful for a board of directors to purchase or locate a school house site, or to purchase, build or move a school house, or to levy a tax to extend schools beyond nine months, without a vote of the people at an election called and conducted as required by section 198 of this act. A majority of the votes cast shall be necessary to authorize the directors to act. If no locality shall receive a majority of the votes, the directors may select a suitable site. The site selected by either method shall be the school site for such district." (Hurd's Stat. 1913, p. 2200.) Section 127 of said chapter 122 provides: "The board of education shall have all the powers of school directors, be subject to the same limitations, and in addition thereto they shall have the power, and it shall be their duty: * * * *Fifth*—To buy or lease sites for school houses with the necessary grounds: *Provided, however,* that it shall not be lawful for such board of education to purchase or locate a school house site, or to purchase, build or move a school house, unless authorized by a majority of all the votes cast at an election called for such purpose in pursuance of a petition signed by not fewer than 500 legal voters of such district, or by one-fifth of all the legal voters of such district," etc.

Counsel for the appellants insist that in order to decide whether the necessary majority of the votes was cast in favor of the school propositions we should only take into

consideration the votes cast on those propositions, and the circuit court so held; while counsel for appellee argues that to decide as to whether the necessary majority was cast in favor of the school propositions we must base the computation on the majority of votes cast at the election, and the Appellate Court so held. In all the cases called to our attention in this State when any given proposition has been submitted to a vote of the people at a regular election at the same time that the voters were voting for county, State, city or township officers, and the different ballots were all placed in one ballot-box and only one set of poll-books kept and returns made, it has been held that the said proposition, in order to carry, must receive a majority of the votes cast for the officials voted on at the election. (*People* v. *Brown,* 11 Ill. 478; *People* v. *Wiant,* 48 id. 263; *Chestnutwood* v. *Hood,* 68 id. 132; *People* v. *Weber,* 222 id. 180; *People* v. *Cincinnati, Lafayette and Chicago Railway Co.* 256 id. 280.) Under the reasoning of these cases it must be held, as 22,901 voters cast their ballots at this election in this school district, that for any one of these propositions to have carried it must have received a majority of said 22,901 votes,—that is, 11,451 votes.

Counsel for appellants insist that the holding of this court in *People* v. *Brown,* 189 Ill. 619, is not in harmony with this conclusion. An examination of the opinion and record in that case, we think, will show that counsel are in error. It was there held that the fact that an election on the establishment of a township high school was held at the same time and place as that at which the trustees of schools were elected, did not, when the election was held on the annual town meeting day, make it a part of the township election, but, on the contrary, it remained a special election, conducted under the provisions of the School law, it being distinctly stated in that case that the decision was based on the fact that there were two separate elections, the ballots being placed in separate ballot-boxes, and,

so far as we can judge from the record and the reasoning of the opinion, it was understood by the court that the two elections were managed and conducted entirely separately from one another, except that the same set of judges and clerks conducted them both. Here, as already stated, in that portion of the school district in the city of Springfield, not only were the ballots all cast in one ballot-box, but only one set of poll-books was kept and one set of returns made.

If, however, we were to assume, for the purposes of this case, that the election as to the three school propositions was a separate and special election, we do not see how it can be held, from the record before us, that a majority of the votes cast at such special school election on these propositions was cast for either one of them. The total vote cast on the first proposition, alone, for and against, was 16,419; the total vote cast for and against the second proposition was 15,725; the total vote cast for and against issuing bonds was 16,055. The argument of counsel for appellants must necessarily be based on the supposition that no voter cast a vote on either the second or third proposition who did not also cast a vote on the first proposition. Beyond question, from the variation of the total vote cast on each of these three propositions, many voters voted only on one or two propositions and not on all three, and no one can determine, from the facts in this record, whether all the people who voted on the second or third proposition, or both of them, voted on the first proposition. To hold, as would be necessary to sustain the position of appellants, that the voting on each one of these three propositions, all on the same ballot, was a special election, each by itself, obviously would be most unreasonable. Neither this court nor any other, so far as we are aware, has so held. We may say in passing that we do not see how it can reasonably be argued that the election on the school propositions, on the facts here stated, could be considered a special election separate

from the election of the members of the board of education under any of the authorities from this or other jurisdictions. It necessarily follows, in our judgment, that by no process of reasoning can it be held that any one of the three propositions here in question received a majority of the votes cast at that election.

In view of the conclusions reached on the questions here discussed we are not required to consider the other points raised by counsel in their briefs.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*