(No. 15466.—Judgment affirmed.)

THE PEOPLE *ex rel.* G. J. Husser *et al.* Appellants, *vs.* ELMER HEDLUND *et al.* Appellees.

*Opinion filed October 20, 1923.*

1. SCHOOLS—*construction of the words "majority of inhabitants * * * voting on the proposition."* Under the high school validating act of June 24, 1921, (Laws of 1921, p. 809,) in determining what constitutes "a majority of the inhabitants * * * voting on the proposition" to organize a high school district, voters whose ballots are so defective that they must be thrown out should not be included as voting on the proposition.

2. ELECTIONS—*number of persons voting on proposition must be determined by the ballots.* A majority of the votes cast at an election is not synonymous with a majority of the inhabitants voting on the proposition, as the number of votes cast is determined by the poll-books, while the majority of votes cast on a given proposition is determined by the ballots.

APPEAL from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

CAREY R. JOHNSON, State's Attorney, (HORACE R. BROWN, and CLAUDE BROWN, of counsel,) for appellants.

L. A. ZEARING, and J. L. SPAULDING, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

An information in *quo warranto* was filed against appellees as members of the board of education of Community High School District No. 511 in Bureau county, and against said district. Appellees filed pleas setting forth, among other things, the steps by which the high school district was formed, and justifying under an act to amend section 1 of an act entitled "An act to legalize the organization of certain high school districts," approved June 24, 1921. Replications being filed, the cause was submitted to the court without a jury, upon a stipulation of facts to the effect that the matters and things alleged in the first, second and fourth pleas of the respondents to the information are to be taken by the court as facts in the case, except as to the allegations of the pleas relating to the votes cast at the election for the organization of the district and the result of such election. At the election organizing the district the names of 318 persons appeared on the poll-books as voters, and 152 votes were cast for the proposition to organize, 127 against it, and 39 ballots were thrown out as defective. No question is raised concerning the validity of these ballots. No proposition other than that for organization of the high school district was submitted to the voters at the election. After the organization of the district a board of education was elected. The trial court found the respondents not guilty and entered judgment against the relators for costs, from which judgment an appeal is perfected to this court.

No question is raised as to the regularity of the steps taken to organize the district or elect the board of education, the only contention being that the proposition did not

receive the necessary majority of the votes cast to make the validating act of 1921 applicable. That act (Laws of 1921, p. 809,) provides as follows: "In all cases where a majority of the inhabitants of any contiguous and compact territory voting on the proposition, having voted at any election called for the purpose by a county superintendent of schools in favor of the organization of such territory into a high school district, and when at a subsequent election similarly called and held a board of education has been chosen for such district, each such election is hereby made legal and valid and such territory is hereby declared legally and validly organized and established as a high school district, and a valid and existing school district and body politic and corporate of this State for the purpose of establishing and maintaining a high school."

It is contended by the appellants that a proper construction of the language of this section requires that the proposition must receive a majority of all votes cast at the election. Appellees contend that the above language means that if the proposition submitted receives more votes for than against, such proposition must be deemed to have carried, and that the 39 ballots thrown out because defective were not votes on the proposition. The thirty-nine electors who gave in these ballots were voters at the election though their ballots gave no expression either for or against the proposition to be determined by the election. Their names appear on the poll-books as voters at such election. It does not, however, follow that they must be counted as voting on the proposition, as contemplated by the validating act. Those voting on a proposition could only be determined by the ballots. A majority of the votes cast at an election is not synonymous with the majority of the inhabitants voting on the proposition. The number of votes cast at an election is determined by the poll-books, while a majority of the votes cast on a given proposition is determined by the ballots. (*Chestnutwood* v. *Hood,* 68 Ill. 132.) The Supreme Court

of New Jersey, in construing the phrase, "a majority of the electors qualified to vote for members of the legislature voting thereon," (this being a requirement for the adoption of an amendment to their constitution,) held: "By the words 'electors voting thereon' are intended the electors who exercise the right of suffrage in such manner that their votes should, under the law, be counted for or against the proposition submitted, and although the number of names on the poll-lists may represent the number of qualified electors who attempted to vote and the rejected ballots may all have been official ballots cast by some of these qualified electors, still it may be that not all of those qualified electors voted in the constitutional sense, and that the rejected ballots were not votes. * * * The presumption is that the election officers acted rightly, and that therefore the rejected ballots were rejected for legal cause and were not votes for or against any amendment; that all the votes legally capable of being counted for or against the amendment were qualified 'electors voting thereon,' of whom a majority approved and ratified it." *State of New Jersey* v. *Wurts,* 63 N. J. L. 289; 45 L. R. A. 251.

In this case there were 318 inhabitants voting at the election. Deducting the 39 votes thrown out, there were 279 votes on the proposition. Of these, 152 voted "for" and 127 voted "against." A majority of the inhabitants of the territory voting on the proposition voted in favor of the organization of the district. The district therefore comes within the scope of the validating act of 1921, and the trial court was right in so holding.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*