(No. 32677.

GEORGE H. ADAMS *et al.*, Appellants, *vs.* THE BOARD OF EDUCATION OF SCHOOL DISTRICT No. 41, DU PAGE COUNTY, Appellee.

*Opinion filed May 20, 1953.*

EDGAR J. ELLIOTT, of Wheaton, for appellants.

RUSSELL W. KEENEY, of Wheaton, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

On May 17, 1952, School District No. 41, Du Page County, held an election with reference to improvement in the school district. Thereafter the petitioners-appellants filed a petition to contest said election. After a hearing thereon the circuit court of Du Page County dismissed said petition, and thereupon the petitioners-appellants took an appeal to this court as provided by statute.

Two forms of ballots were used in said election, submitting to the electors several propositions, which, if approved by the necessary number of voters, would authorize the purchase of a new school site, the selection of a particular site, the building of a new school, and the issuance of bonds therefor, and the building of an addition to an existing school and issuance of bonds therefor.

One of the ballots, designated as ballot No. 2, gave to the voters an opportunity to vote on five propositions, which were as follows: Proposition I: Shall the Board of Education purchase an additional school site; Proposition II: Shall the Board of Education build a new school building; Proposition III: Shall the Board of Education build an addition to one of the existing schools; Proposi-

tion IV: Shall the Board of Education issue bonds in the sum of $865,000 to buy a school site and build a new school building; and Proposition V: Shall the Board of Education issue bonds to build an addition to an existing school.

The vote on Proposition I on said ballot No. 2, which had to do with the purchase of an additional school site, was: Yes (to purchase) 1144; No (against purchase) 653. All the other propositions on ballot No. 2 carried.

Ballot No. 1 had to do with selection of a school site, in event the voters authorized the purchase of an additional school site, which proposition was submitted to them as Proposition No. I on ballot No. 2.

Three specifically described sites were placed on ballot No. 1 pursuant to petitions duly filed. A voter could indicate his choice of any of said sites by placing a cross opposite any of the described sites in the space provided for that purpose on the ballot. Also on said ballot a blank space was provided wherein the voter could place the description of any site he might favor and cast a vote therefor by placing a cross opposite said description.

At the election 1933 No. 2 ballots were handed out to the voters, and also the same number to the voters on the selection of a school site designated as ballot No. 1. Of the No. 1 ballots 1619 were returned voted and counted by the election officials, and 311 No. 1 ballots were returned to the election officials but not counted because they were erroneously voted or returned in blank. Three of the No. 1 ballots were not returned to the officials. The 1619 ballots counted, plus 311 not voted, plus 3 not returned account for the entire 1933 No. 1 ballots handed out.

Of the 1619 legal and lawful votes cast on the proposition set forth on ballot No. 1 for the selection of a site, 868 voted in favor of what was designated on the ballot as Site 1 or the Hawthorne site, and which was one of the

three sites specifically described on ballot No. 1, 158 voted for Site 2 designated on ballot No. 1 as Site 2 or the Western Avenue site, and 593 voted for the site designated on ballot No. 1 as Site 3. No votes were cast in the blank space designated as Site 4 on said ballot.

At the hearing on the petition to contest the election in the circuit court of Du Page County, the court found that 868 votes were cast for Site 1, being the Hawthorne site specifically described on ballot No. 1, and that the same was a majority of all the votes at said election voting on the proposition and dismissed the petition to contest the election.

The appellants contend that the trial court erred in holding that the Hawthorne site had been selected by a majority of the voters voting on the proposition for selection of the site. In their argument before this court they assert that in order for the Hawthorne site to be selected it was necessary for it to have received a vote equal to or greater than a majority of the votes cast on the proposition to purchase a school site, submitted at the same election and upon which 1797 lawful votes were cast. A majority of the votes cast on the proposition to authorize the purchase of a site would be 898, or 30 votes more than the vote for the selection of the Hawthorne site. The basis for appellants' contention is that the proposition to authorize the purchase of any site, although on a separate ballot, was voted on at the same election as the proposition for selection of a site, the ballots therefor were placed in the same ballot box with the ballots on the proposition for the selection of a site, that only one set of pollbooks was used, that *all* the ballots were canvassed and returned together, were cast by the same voters, the site selected could not be acquired unless the authority to purchase a site were given, and therefore, the general purchase of a site cannot be considered separately from the selection of a particular site.

The election in this case was held pursuant to section 7-17 of the School Code. (Ill. Rev. Stat. 1951, chap. 122, par. 7-17.) The pertinent part of that statute here reads as follows: "To buy or lease one or more sites for school-houses, with necessary ground, and to purchase, build or move a schoolhouse, but shall not purchase or locate a schoolhouse site, or purchase, build or move a schoolhouse, unless authorized by a majority of all votes cast on the proposition at an election called for such purpose in pursuance of a petition signed either by not less than three hundred legal voters, or by one-fifth of all the legal voters of the district, whichever is less; however, the questions of purchasing a schoolhouse site, building a new school-house, and issuing bonds for the purpose of borrowing money to purchase a schoolhouse site and to build a new schoolhouse may be combined into one or more propositions on the ballot." It is to be noted that said statute provides that the questions to purchase a school site, to locate a site, to build a schoolhouse, and to issue bonds for the purpose of purchasing a site and to build a new schoolhouse may be combined into one or more propositions. This provision of the statute was followed in the preparation of ballot No. 2, each being a separate proposition. There is no contention that each of the five propositions placed on said ballot did not carry at the election.

Ballot No. 1, which is directly involved in this case, contains the proposition to select a schoolhouse site, and complies with the provisions of section 5A-12. That section provides that by a petition the proposition of selecting a particular site may be placed on the ballot to be used at an election. There is no contention here that such was not done in a proper manner in placing the Hawthorne site and the other two specifically described sites on ballot No. 1. Said section further prescribes the form of the ballot to be used. There is no contention that ballot No. 1 does not conform to such statutory require-

ments. It is also apparent that ballot No. 1 followed the above statute in providing a blank space in order that any voter might vote for a school site not listed on the ballot.

It is clear from the foregoing that the proposition to purchase a site is separate and distinct from the proposition to select a site. The statute recognizes the difference by especially providing the form of the ballot to be used at an election to select a school site. Section 5A-13 contemplates a vote on the general proposition to purchase a site and section 5A-12 a vote whereby the voters are privileged to vote their choice as to a school site. The two propositions are separate and distinct, and there is nothing in the statute to indicate, or from which it can be concluded, that the vote on the general proposition to purchase a site shall be used as the basis for determining the majority that must be received by any particular proposition in order to be approved by the voters. To so construe the statute would do violence to the language used therein and be contrary to the expressed legislative intent.

Section 7-17, as set forth above in part, provides that the powers of that section shall not be available to the board of education "unless authorized by a majority of all votes cast on the proposition at an election called for such purpose." We have already determined that each power there enumerated may appear as a separate proposion at the same election, as contemplated by the several sections of the chapter relating to school law. It is not required that each proposition receive a majority of the votes cast at the election. A majority voting on a proposition is not synonymous with the majority of votes cast at an election. The number of votes cast at an election is determined by the pollbooks, while a majority of the votes cast on a given proposition is determined by the ballots. Moreover, the presumption is that the election officials acted rightly, and that therefore the rejected ballots were rejected for legal cause and were not votes properly cast

on any proposition. It is only those ballots legally capable of being counted upon the proposition that determine the majority necessary for approval. (*People ex rel. Husser v. Hedlund,* 309 Ill. 280.) It is clear then that only those votes legally and lawfully cast on the selection of a site need be considered in determining the majority necessary for approval. On the proposition for selection of a site 1619 votes were so cast, and the Hawthorne site received 868 votes, well over the bare majority. The Hawthorne site was thus properly designated as the site to be purchased.

In support of their contentions the appellants cite *O'Connor* v. *High School Board of Education,* 288 Ill. 240, and *Hysler* v. *Springfield School Dist.* 272 Ill. 458. Neither of those cases can have any applicability here. In the *O'Connor case* the proposition of building a new building and on what site it should be constructed were submitted to the voters as one proposition, whereas more than one proposition was involved. That case said nothing concerning the question whether the majority on one proposition must be equal to or greater than the majority voted on another proposition to carry it, which appellants assert is the sole and only question before this court. In the *Hysler case* a school election was held at the same time as an election on whether the territory should become anti-saloon territory. The school law at that time, contrary to the present provisions, made no provision for a majority voting on a proposition, but only for a majority voting at the election.

Appellants argue before this court that the election was not free and equal, as a greater burden was cast upon a voter who wished to vote against the proposed sites than on one registering an affirmative vote. This is a constitutional question and it must appear that it was presented to and passed upon by the trial court, its ruling preserved in the record, and error assigned upon it for such question to be considered by this court. (*People* v. *Schmidt,* 413

234

Ill. 80.) Upon strict examination of the record together with the pleadings, stipulation and order contained therein, we are unable to find that such question was presented to the trial court or that the court passed upon it. Neither is the question assigned as error here, but is raised only in argument. Consequently, it cannot be considered by this court.

We therefore hold that the Hawthorne Street site did receive a majority of the votes cast upon the proposition, and the judgment of the circuit court of Du Page County dismissing the petition is affirmed.

*Judgment affirmed.*